UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER<br>1718 Connecticut Ave., N.W.<br>Suite 200<br>Washington, DC 20009<br><br>　　　　Plaintiff,<br><br>v.<br><br>OFFICE OF THE DIRECTOR OF NATIONAL<br>INTELLIGENCE<br>Washington, DC 20511<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No._____<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR INJUNCTIVE RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2012), for injunctive and other appropriate relief, seeking the release of agency records requested by the Electronic Privacy Information Center ("EPIC") from the Office of the Director of National Intelligence ("ODNI").

2. This lawsuit challenges the failure of the ODNI to disclose documents in response to EPIC's February 10, 2012 Freedom of Information Act request. EPIC's FOIA Request sought agency records related to the Guidelines for Access, Retention, Use, and Dissemination by the National Counterterrorism Center and Other Agencies of Information in Datasets Containing Non-Terrorism Information ("NCTC Guidelines"). Defendant has failed to comply with statutory deadlines and has failed to disclose a single record. EPIC asks the Court to order immediate disclosure of all responsive records.

1

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(A)(vii), 5 U.S.C. § 552(a)(4)(B), and 5 U.S.C. § 552(a)(6)(C)(i) (2012). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2012). Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) (2012).

### Parties

4. Plaintiff EPIC is a public interest research organization incorporated as a not-for-profit corporation in Washington, D.C. EPIC's conducts oversight of Government activities and policies and analyzes their impact on civil liberties and privacy interests. Among its other activities, EPIC publishes books, reports, and a bi-weekly electronic newsletter. EPIC also maintains a popular Internet site, http://www.epic.org, which contains extensive information on current privacy issues, including documents obtained from federal agencies under the FOIA. EPIC routinely and systematically disseminates information to the public through its website and other media outlets. EPIC is a representative of the news media in *EPIC v. Dep't of Defense*, 241 F. Supp. 2d. 5 (D.D.C. 2003).

5. Defendant ODNI is the parent agency of the National Counterterrorism Center ("NCTC"). ODNI is a Department of the Executive Branch of the U.S. government and an agency within the meaning of 5 U.S.C. § 552(f)(1). ODNI is headquartered in Washington, D.C.

### Facts
### The NCTC Guidelines

6. On March 22, 2012, the New York Times reported that Attorney General Eric Holder had established revised guidelines for the NCTC which would relax restrictions on how ODNI analysts may retrieve, store, and search information about Americans

7. The revised NCTC Guidelines allow the NCTC to copy entire datasets in other

federal agencies and to analyze the aggregate data.

8. The New York Times article described an NCTC "priority list" that sets forth the databases that the Center intends to copy in their entirety.

9. The publicly available NCTC Guidelines describe various implementation procedures.

10. Section (B)(2)(a) of the NTCT Guidelines states "NCTC will ensure mechanisms are in place at NCTC to correct or document the inaccuracy or unreliability of [ ] information, and supplement incomplete information to the extent additional information becomes available."

11. Section (B)(2)(a) of the NCTC Guidelines details the process by which the NCTC can obtain and copy datasets: "For access to or acquisition of specific datasets, the DNI, or the DNI's designee, shall collaborate with the data provider to identify any legal constraints, operational considerations, privacy or civil rights or civil liberties concerns or protections, or other issues, and to develop appropriate Terms and Conditions that will govern NCTC's access to or acquisition of datasets under these Guidelines."

12. Section (B)(2)(d) of the NCTC Guidelines also establishes the procedures by which the heads of departments or agencies can raise objections to the NCTC's requests for data: "If the head of the department or agency providing the information or the DNI objects to providing data to NCTC, objects to the "track" under which NCTC intends to acquire the data, or objects to the Terms and Conditions developed after consultation…, the head of the department or agency or the DNI may raise any concerns, in writing, with the other party…Failing resolution, either party may refer a dispute concerning constitutional or other legal matters to the Attorney General and may seek the resolution of any other disputes through the National Security Council. In connection with any such disputes, the Attorney General or National

3

Security Council may seek the advice of the Privacy and Civil Liberties Oversight Board."

13. Section (B)(3) provides that "all NCTC employees, NCTC contractors, and detailees and assignees to NCTC from other agencies" who have access to the databases will receive "training in the use of each dataset to which they will have access to ensure that these personnel use the datasets only for authorized NCTC purposes and understand the baseline and enhanced safeguards, dissemination restrictions, and other privacy and civil liberties protections they must apply to each such dataset."

14. Section (C)(3)(d)(3) provides that "[a]ccess to these datasets will be monitored, recorded, and audited" in a way that keeps track of "logons and logoffs, file and object manipulation and changes, and queries executed . . ."

15. Section (C)(3)(e) mandates that whenever NCTC acquires a new dataset, or portion thereof, "the Director of NCTC or Designee shall determine, in writing, whether enhanced safeguards, procedures, and oversight mechanisms are needed."

16. The NCTC Guidelines create multiple standards for determining whether information and datasets are may be accessed or acquired by NCTC.

17. Under the NCTC Guidelines, the NCTC may permanently retain, use, or disseminate data if it is "reasonably believed to constitute terrorism information," defined to mean if, "based on the knowledge and experience of counterterrorism analysts as well as the factual and practical considerations of everyday life on which reasonable and prudent persons act, there are facts giving rise to a reasonable, articulable suspicion that the information is terrorism information."

18. The NCTC Guidelines allow NCTC, in coordination with data providers, to identify datasets that are "reasonably believed to contain terrorism information."

19. The NCTC Guidelines also allow NCTC to acquire and replicate entire portions of agency datasets or entire datasets when the Director of NCTC or a Designee determines that a dataset is "likely to contain significant terrorism information."

**EPIC Submitted FOIA Requests to ODNI Regarding the Revised NCTC Guidelines**

20. Paragraphs 1-19 above are hereby incorporated by reference as if set forth fully herein.

21. On March 28, 2012, EPIC transmitted, via facsimile, its first FOIA request to ODNI for agency records ("EPIC's First FOIA Request").

22. EPIC's First FOIA Request asked for the following agency records:

   a. The "priority list" of databases that the National Counterterrorism Center plans to copy.

23. On June 15, 2012, EPIC transmitted via facsimile three additional FOIA request to ODNI for agency records ("EPIC's Second FOIA Request", "EPIC's Third Request," and "EPIC's Fourth Request").

24. EPIC's Second FOIA Request asked for the following agency records:

   a. The guidelines and mechanisms for the correction or documentation of "inaccuracy or unreliability of [ ] information, and supplement incomplete information to the extent additional information becomes available;"
   b. Training materials used to "ensure that [ ] personnel use the datasets only for authorized NCTC purposes and understand the baseline and enhanced safeguards, dissemination restrictions, and other privacy and civil liberties protections they must apply to each such dataset;"
   c. Any information or documentation related to abuse, misuse, or unauthorized access of datasets acquired by NCTC (as indicated by the monitoring, recording, and auditing described in Section (C)(3)(d)(3));
   d. Written determinations by the Director of NCTC or designee regarding "whether enhanced safeguards, procedures, and oversight mechanisms are needed."

25. EPIC's Third Request asked for the following agency records:

   a. Terms and Conditions and related documents, as described in Section

5

        (B)(2)(a) of the NCTC Guidelines;
  b. All documents related to disputes between department and agency heads and DNI, as described under Section (B)(2)(d) of the NCTC Guidelines.

26. EPIC's Fourth Request asked for the following agency records:

   a. Any guidelines or legal memoranda discussing NCTC's understanding and interpretation of the following standards used in the NCTC Guidelines discussed above: "reasonably believed to constitute terrorism information," "reasonably believed to contain terrorism information," and "likely to contain significant terrorism information."

27. In all four of its FOIA requests, EPIC asked ODNI to expedite its response to EPIC's FOIA requests because EPIC is primarily engaged in disseminating information and the requests pertained to a matter about which there was an urgency to inform the public about an actual or alleged federal government activity. EPIC made this request pursuant to 5 U.S.C. § 552(a)(6)(E)(v)(II). EPIC based the request on the need for the public to obtain information about the NCTC's revised Guidelines. EPIC cited extensive news coverage of the revised NCTC Guidelines and the fact that sharing of these datasets has profound privacy implications for U.S. persons.

28. In all four of its FOIA requests, EPIC also requested "News Media" fee status under the Freedom of Information Act, based on its status as a "representative of the news media."

29. EPIC further requested waiver of all duplication fees because disclosure of the records requested in EPIC's FOIA requests will contribute significantly to public understanding of the operations and activities of the Government.

**ODNI Failed to Make a Timely Determination Regarding EPIC's FOIA Request**

30. Paragraphs 1-29 above are hereby incorporated by reference as if set forth fully herein.

31. On March 29, 2012, ODNI acknowledged receipt of EPIC's First FOIA Request.

The ODNI stated simply: "We accept your request and it will be processed in accordance with the FOIA." The agency made not determination regarding the substance of EPIC's document request, EPIC's request for expedited processing, or EPIC's request for news media fee status and fee waiver.

32. ODNI assigned EPIC's First FOIA Request the file number DF-2012-00059.

33. On July 5, 2012, ODNI acknowledged EPIC's Second FOIA Request. The ODNI stated simply: "We accept your request and it will be processed in accordance with the FOIA." The agency made not determination regarding the substance of EPIC's document request or EPIC's request for news media fee status/waiver. The ODNI denied EPIC's request for expedited processing on the basis that EPIC did not demonstrate "compelling need."

34. ODNI assigned EPIC's Second FOIA Request the file number DF-2012-00092.

35. On July 5, 2012, ODNI acknowledged EPIC's Third FOIA Request. The ODNI stated simply: "We accept your request and it will be processed in accordance with the FOIA." The agency made not determination regarding the substance of EPIC's document request or EPIC's request for news media fee status/waiver. The ODNI denied EPIC's request for expedited processing on the basis that EPIC did not demonstrate "compelling need."

36. ODNI assigned EPIC's Third FOIA Request the file number DF-2012-00091.

37. On July 5, 2012, ODNI acknowledged EPIC's Fourth FOIA Request. The ODNI stated simply: "We accept your request and it will be processed in accordance with the FOIA." The agency made not determination regarding the substance of EPIC's document request or EPIC's request for news media fee status/waiver. The ODNI denied EPIC's request for expedited processing on the basis that EPIC did not demonstrate "compelling need."

38. ODNI assigned EPIC's Fourth FOIA Request the file number DF-2012-00090.

39. Through the date of this pleading, ODNI has not contacted EPIC again regarding the status of any of EPIC's four FOIA requests.

40. Through the date of this pleading, ODNI has not disclosed a single agency record in response to any of EPIC's FOIA requests.

### EPIC Has Constructively Exhausted its Administrative Remedies

41. Paragraphs 1-40 above are hereby incorporated by reference as if set forth fully herein.

42. On June 8, 2012, EPIC transmitted, via facscimile, an administrative appeal to the ODNI ("EPIC's Administrative Appeal") regarding EPIC's First FOIA Request.

43. EPIC's Administrative Appeal appealed ODNI's failure to disclose relevant records in its possession and failure to respond within FOIA's statutory deadline. EPIC also reiterated its request for "news media" fee.

44. ODNI failed to respond to EPIC within the twenty-day time period prescribed by 5 U.S.C. § 552(a)(6)(A)(ii) (2012).

45. ODNI's failure to respond within the twenty-day statutory time limit constitutes a constructive denial of EPIC's appeal.

### Count I
### Violation of FOIA: Failure to Comply With Statutory Deadlines

46. Paragraphs 1-45 above are hereby incorporated by reference as if set forth fully herein.

47. As described above, Defendant ODNI's failure to respond to EPIC's FOIA Requests violated the statutory deadlines imposed by the FOIA, including the deadlines set forth in 5 U.S.C. § 552(a)(6)(E)(ii)(I) and 5 U.S.C. § 552(a)(6)(A)(ii).

48. EPIC has constructively exhausted the applicable administrative remedies with

respect to EPIC's FOIA Request. 5 U.S.C. § 552(a)(6)(C)(i)

49. EPIC is entitled to injunctive relief compelling the release and disclosure of the requested agency records.

### Count II
### Violation of FOIA: Unlawful Withholding of Agency Records

50. Paragraphs 1-49 above are hereby incorporated by reference as if set forth fully herein.

51. As described above, ODNI has failed to comply with statutory deadlines and failed to make responsive records available to EPIC.

52. As a result of ODNI's unlawful delay and failure to conduct a reasonable search, the agency has withheld responsive agency records from EPIC in violation of FOIA, 5 U.S.C. § 552(a)(3)(A).

53. EPIC has constructively exhausted the applicable administrative remedies with respect to EPIC's FOIA Request. 5 U.S.C. § 552(a)(6)(C)(i).

54. EPIC is entitled to injunctive relief compelling the release and disclosure of the requested agency records.

### Count III
### Violation of FOIA: Failure to Classify EPIC as a Representative of the News Media for Purposes of Assessing Processing Fees

55. Paragraphs 1-54 above are hereby incorporated by reference as if set forth fully herein.

56. As described above, ONDI has failed to make a determination regarding EPIC's request for "news media" fee status in violation of FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II).

57. EPIC has constructively exhausted the applicable administrative remedies with

9

respect to EPIC's FOIA Request. 5 U.S.C. § 552(a)(6)(C)(i).

58. EPIC is entitled to injunctive relief compelling the release and disclosure of the requested agency records with news media fee status and fee waiver.

### **Requested Relief**

WHEREFORE, Plaintiff prays that this Court:

A. order Defendant to conduct a reasonable search for all responsive records;

B. order Defendant to promptly disclose to plaintiff responsive agency records;

C. order Defendant to recognize Plaintiff's "news media" fee status for the purpose of EPIC's FOIA requests, waive all duplication fees, and disclose all responsive agency records without charge;

D. order Defendant to grant Plaintiff's request for expedited processing;

E. award Plaintiff its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E) (2010); and

F. grant such other relief as the Court may deem just and proper.

Respectfully submitted,

By: /s/ Ginger P. McCall
Ginger P. McCall (DC Bar #1001104)
Marc Rotenberg, Esquire (DC Bar # 422825)
ELECTRONIC PRIVACY INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: August 1, 2012