# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) | |
| Plaintiff, | ) ) | 1:12-cv-1282 (JEB) |
| vs. | ) ) | |
| OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE | ) ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendant, the Office of the Director of National Intelligence ("ODNI"), respectfully moves for summary judgment on the claims of Plaintiff Electronic Privacy Information Center ("EPIC"), arising under the Freedom of Information Act ("FOIA"). As demonstrated in the accompanying Memorandum and supporting declarations and exhibits, ODNI has fully satisfied all of its obligations under the statute and is thus entitled to summary judgment. A Statement of Material Facts as to Which There Is No Genuine Issue and a proposed order are also attached.

Dated: May 10, 2013

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

RONALD C. MACHEN JR.
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Eric J. Soskin*

ERIC J. SOSKIN
PA Bar 200663
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Email:  eric.soskin@usdoj.gov
Tel:     (202) 353-0533
Fax:     (202) 616-8470

*Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) | |
| Plaintiff, | ) ) | 1:12-cv-1282 (JEB) |
| vs. | ) ) | |
| OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff Electronic Privacy Information Center ("EPIC") filed this suit pursuant to the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking records from the Office of the

Director of National Intelligence ("ODNI") and its component, the National Counterterrorism

Center ("NCTC").  Plaintiff submitted several requests to ODNI for information pertaining to

revised guidelines describing how NCTC retrieves and safeguards information from other federal

agencies.

As the accompanying declaration demonstrates, ODNI and NCTC have satisfied all their

statutory obligations under FOIA.  ODNI conducted a broad search reasonably calculated to

locate any records responsive to Plaintiff's requests, and it located 29 documents responsive and

subject to FOIA or deemed to be otherwise of interest to EPIC.  ODNI released 8 documents,

withholding only such information falling within specific FOIA exemptions.   Accordingly,

defendant is entitled to summary judgment in this case.

## FACTUAL BACKGROUND

### I.   FOIA REQUESTS

After the Director of National Intelligence, the Attorney General, and the Director of

NCTC signed an updated version of the "Guidelines for Access, Retention, Use, and

Dissemination by the NCTC and Other Agencies of Information in Datasets Containing Non-

Terrorism Information," ("Revised AG Guidelines"), Plaintiff submitted a series of requests

under FOIA to ODNI.[1]   *See generally* Complaint, dkt. no. 1; *id.* at ¶¶6-8, 20-23.

#### A.   Request DF-2012-00059

EPIC's first FOIA request, sent to ODNI by letter dated March 28, 2012, asked for: "the

'priority list' of databases that [NCTC] plans to copy."   Ex. 1, Declaration of ODNI Chief

Management Officer Mark Ewing ("Ewing Decl.") at ¶ 9; *id.* at Ex A (apparently quoting a *New

York Times* article about the Revised AG Guidelines, *see* Complaint at ¶ 8).   ODNI accepted

Plaintiff's request, assigned it request number DF-2012-00059, and notified Plaintiff of that fact

via letter dated March 29, 2012.   Ewing Decl. at ¶ 10; *id.* at Ex B.   On June 8, 2012, Plaintiff

appealed ODNI's failure to respond to the request within 20 days.   Ewing Decl. at ¶ 11; *id.* at Ex

C.

#### B.   Request DF-2012-00090

Three more FOIA requests followed on June 14 and June 15, 2012.   *See* Ewing Decl. at

¶¶ 17, 22, 27.   ODNI assigned request number DF-2012-00090 to the most complex of these

requests.   Ewing Decl. at ¶ 18.   DF-2012-00090 comprises four subparts, seeking:

---

[1] These revised guidelines updated a prior set of guidelines issued in November, 2008. *See generally Joint
Statement: Revised Guidelines Issued to Allow the NCTC to Access and Analyze Certain Federal Data More
Effectively to Combat Terrorist Threats*, Office of the Director of National Intelligence and Department of Justice
(Mar. 22, 2012), available at: http://www.dni.gov/index.php/newsroom/press-releases/96-press-releases-2012 (last
visited May 8, 2013). As explained *infra*, documents related to the earlier version of the AG Guidelines are not at
issue in this litigation.

"guidelines and mechanisms for the correction or documentation of 'inaccuracy or unreliability of [] information . . .'";

"Training materials used to 'ensure that [] personnel use the datasets only for authorized NCTC purposes and understand the . . . safeguards, dissemination restrictions, and other privacy and civil liberties protections'";

"information or documentation related to abuse, misuse, or unauthorized access of datasets . . . as indicated by the monitoring, recording, and auditing described in Section (C)(3)(d)(3)" of the Guidelines; and

"Written determinations by the Director of NCTC or designee regarding" the need to further enhance privacy protections.

Ewing Decl. at ¶ 17; *id.* at Ex. G.

## C.  **Requests DF-2012-00091 and DF-2012-00092**

EPIC's June 14, 2012 FOIA request, to which ODNI assigned request number DF-2012

00091, sought:

"Terms and Conditions" agreed upon between ODNI and other federal agencies governing NCTC's access to datasets, "as described in Section (B)(2)(a)" of the Revised AG guidelines; and

"documents relating to disputes between department and agency heads and [ODNI]", limited to objections raised "in writing" pursuant to Section (B)(2)(d) of the Guidelines.

Ewing Decl. at ¶ 22-23; *id.* at Ex. L.  A June 15, 2012 request, to which ODNI assigned  request

number DF-2012-00092, requested:

"guidelines or legal memoranda discussing NCTC's understanding and interpretation of the following standards used in the NCTC Guidelines: 'reasonably believed to constitute terrorism information,' 'reasonably believed to contain terrorism information,' and 'likely to contain significant terrorism information.'"

Ewing Decl. at ¶ 27-28, *id.* at Ex. Q.

On July 5, 2012, ODNI informed EPIC that the FOIA requests to which it assigned

numbers DF-2012-00090, 2012-00091, and 2012-00092 had been received.  *See* Ewing Decl. at

¶ ¶  18, 23, 28; *id.* at Ex. H, Ex. M, Ex. R.  On July 19, 2012, EPIC appealed ODNI's failure to

respond to request DF-2012-00091 within 20 days.  *See* Ewing Decl. at ¶ 24; *id.* at Ex. N.

## II.  Narrowing of FOIA Requests and Document Releases

### A.  October 12, 2012 Agreement to Narrow EPIC's FOIA Requests

On August 1, 2012, Plaintiff filed this action, which Defendant answered on October 1,

2012.  Shortly afterwards, the parties discussed limiting the scope of EPIC's FOIA requests to

permit ODNI to search a narrower universe of potentially-responsive materials and provide

responsive materials, if any, within a definable time period.  Accordingly, the parties agreed to

the following: (1) that EPIC's FOIA requests would be limited to "records related to the revised

NCTC guidelines of March, 2012"; and (2) that most of EPIC's FOIA requests would be limited

to "documents that are final and not predecisional or deliberative in nature."[2]  Ex. 2 (October 12,

2012 email from Eric Soskin to Ginger McCall) ("October 12, 2012 agreement"); *see* Ewing

Decl. at ¶¶ 14, 31.  This agreement made it possible for ODNI to streamline its search and

respond to EPIC's FOIA requests within 60 days, thereby avoiding unnecessary litigation over

whether to stay this action for a lengthy, and possibly indefinite period.

The parties then agreed on a schedule under which ODNI would respond to EPIC's FOIA

requests, which they proposed to the Court on October 15, 2012, and the Court adopted. *See* dkt.

no. 7; Minute Order of Oct. 16, 2012.

### B.  Responses to Request DF-2012-00059

Pursuant to the parties' agreement, ODNI provided its final response to EPIC's FOIA

request #DF-2012-00059 on December 14, 2012.  Ewing Decl. at ¶ 15.  In response to request

#DF-2012-00059, ODNI produced a total of seven pages in the form of three responsive records

subject to FOIA and withheld portions of those pages pursuant to applicable FOIA exemptions.

Ewing Decl. at ¶¶ 15, 37(a).  By letter dated May 8, 2013, ODNI supplemented its final response

to EPIC's request by releasing additional information in two of the three records.  *Id.* at ¶ 16.

---

[2] The parties agreed that this limitation would apply with one exception: documents responsive to EPIC's request for "Any information or documentation related to abuse, misuse, or unauthorized access of datasets acquired by NCTC (as indicated by the monitoring, recording, and auditing described in Section (C)(3)(d)(3)."

ODNI continued to withhold portions of these three documents pursuant to FOIA exemptions 1, 3, 5, and 7(E). *Id.* at ¶ 16; Ex. F.

**C.      Responses to Request DF-2012-00090**

After the parties agreed to an extension of time for ODNI to complete its responses to EPIC's requests, *see* dkt. no. 9; Minute Order (Feb. 8, 2013), ODNI provided an interim response to request DF-2012-00090 on February 12, 2013.  Ewing Decl. at ¶ 19.  ODNI released over 160 pages in segregable form from four responsive records subject to FOIA, withholding portions of those pages pursuant to Exemptions 1, 2, 3, and 6 under FOIA.  *Id.* at ¶¶ 19, 37(b).  All of the documents released on February 12, 2013 were identified as responsive to the second subpart of request DF-2012-00090, seeking certain categories of training materials.  *Id.*

In response to the first subpart of request DF-2012-00090, for "guidelines and mechanisms" for correcting "incorrect" or unreliab[le]" information, ODNI notified EPIC that it could not find any responsive records.  Ewing Decl. at ¶ 19.  Likewise, in response to the fourth subpart of request DF-2012-00090, for certain written determinations by the NCTC Director, ODNI found no responsive records.  *Id.*

In response to the third subpart, for information and compliance reports related to ODNI's monitoring and auditing of unauthorized access to datasets, ODNI notified EPIC that release of the material it had located in performing its searches would require "coordination with other government agencies." Ewing Decl. at ¶ 19; *see id.* at Ex. I.  On March 11, 2013, ODNI issued a further interim response to the third subpart of request DF-2012-00090.  Ewing Decl. at ¶ 20.  In this response, ODNI released one document in part, subject to withholdings pursuant to FOIA Exemptions 1, 3, and 6.  *Id.*  ODNI located 21 other documents which it withheld in full based on FOIA Exemptions 1, 2, 3, 5, 6, and 7(E).  *Id.* at ¶ 20; n.2.  In its letter, ODNI also noted that these withheld documents "were not technically responsive" to EPIC's FOIA request because the incidents recorded were not "related to the specific provision" of the Revised AG Guidelines cited in EPIC's request.  Ewing Decl. at ¶ 20.  However, ODNI processed the documents "as a matter of agency discretion." *Id.* at ¶ 20; Ex. J.

On May 8, 2013, ODNI released additional information in one of the documents previously released in response to subpart 2 of request DF-2012-00090. *Id.* at ¶ 21; Ex. K. Some information in this document remained withheld pursuant to FOIA Exemptions 1, 2, 3, and 6. *Id.*

### D.      Responses to Requests DF-2012-00091 and DF-2012-00092.

On February 12, 2013, ODNI notified EPIC that it could not locate any responsive records to requests DF-2012-00091 and DF-2012-00092.  Ewing Decl. at ¶¶ 26, 29.

### E.      Summary of Documents Released[3]

#### 1.      Request DF-2012-00059

On December 14, 2012, ODNI released in part three documents responsive to this request as follows:

- Document CO5938161 is one page and labeled "CT Resource Council," and is dated March 22, 2012.  This document releases information segregable from redactions pursuant to Exemptions 1, 3, 5, and 7(E).  The redacted information consists of the "names of specific data-sets" and "the names of data provider agencies."  Ewing Decl. at ¶¶ 37(a)(iii), 41, 76.  In addition, some of the redacted information "detailed deliberative discussions with potential data provider agencies," and was accordingly redacted pursuant to Exemption 5.  Ewing Decl. at ¶ 66.

- Document CO5947914 is three pages in length and labeled "Counterterrorism Data Layer: Datasets Ingested . . ."  The pages release segregable information while redacting information pursuant to Exemptions 1, 3, 5, and 7(E).  The withheld information includes intelligence analysis and other information "regarding sensitive or classified collection systems and data-sets," including the names of those data-sets.  Ewing Decl. at ¶¶ 37 (a)(ii); 41, 66, 76.

- Document CO5947903 is also three pages in length and labeled "Counterterrorism Data Layer: Status of Data-sets Ingested," and releases segregable information while redacting

---

[3] A detailed description of the 29 documents located can be found in Paragraph 37 of the Ewing Declaration.

information pursuant to Exemptions 1, 3, 5, and 7(E).  This information includes intelligence analysis and other information "regarding sensitive or classified collection systems and data-sets," including the names of those data-sets.  Ewing Decl. at ¶¶ 37(a)(i) 41, 66, 76.

### 2.   Request DF-2012-00090

On February 12, 2013, ODNI released in part four documents responsive to subpart 2 of this request, as follows:

- Document CO5956033 is a 32-page slide deck labeled "NCTC Guidelines: Understanding Acquisition, Retention, and Dissemination . . ."  Ewing Decl. at ¶ 37(b)(i).  Page 3 withholds, pursuant to Exemptions 1 and 3, the name of a classified data set and examples of intelligence analysis providing specific information about sensitive or classified collection systems.   Ewing Decl. at ¶ 37(b)(i),  ¶ 42.  Page 26, titled "How to Find NCTC Legal," withholds ODNI employees' names, phone numbers, room numbers, and email addresses pursuant to Exemptions 2, 3, and 6.  Ewing Decl. at ¶ 37(b)(i);  ¶ 48, ¶71.

- Document CO5955997 is an eight-page slide deck labeled "NCTC Civil Liberties and Privacy Office: Protection of Privacy and Civil Liberties."  Page 8 withholds an ODNI employee's name, phone number, room number, and internal email address, pursuant to Exemptions 2, 3, and 6.  Ewing Decl. at ¶37(b)(iv);  ¶ 48, ¶ 69.

- Document CO5956031 consists of 56 screen shots of an electronic training program labeled "PA101: Privacy Act Safeguarding Personal Information."  Two pages contain information on internal ODNI email addresses redacted pursuant to Exemptions 2 and 3.  Ewing Decl. at ¶ 37(b)(iii), ¶ 48.

- Document CO5956002 consists of 66 screen shots of an electronic training program labeled "Data Access and Use, NCTC."  Ewing Decl. ¶ 37(b)(ii).  Six pages contain redactions pursuant to Exemption 1 and Exemption 3 of the names of classified data-sets and examples of intelligence analysis, including "highly sensitive collection

methodologies employed in support of U.S. Government counterterrorism efforts."
Ewing Decl. at ¶¶ 42, 54.  Two pages contain redactions pursuant to Exemptions 2 and 3,
and one page contains a redaction pursuant to Exemptions 2, 3, and 6.  *Id.* at ¶ 48.  On
these three pages, information on internal ODNI websites and employees' phone numbers
were redacted pursuant to Exemptions 2 and 3, and an employee's name and phone
number was redacted pursuant to Exemption 6.  *Id.* at ¶ 48, 71.

On March 11, 2013, ODNI released in part one document it located while conducting its
search for documents responsive to subpart 3 of this request.  Ewing Decl. at ¶ 20.

-   Document CO5960965 is five pages titled "Assessment of Compliance Incident."  Ewing
    Decl. at ¶ 37(c)(i).  The first page contains an employee name redacted pursuant to
    Exemption 6 and the fourth page contains classified information about the number of
    records NCTC receives weekly from a DHS dataset, redacted pursuant to Exemption 1
    and 3.  Ewing Decl. at ¶ 44.  Although this document described a compliance incident
    and was located in response to ODNI's search, the incident related to an issue other than
    "the specific provision of the revised 2012 AG Guidelines," § III.(C)(3)(d)(3), cited in
    Plaintiff's FOIA request, and was thus processed "as a matter of agency discretion."  *Id.*
    at ¶ 20.

    **F.   Summary of Documents Withheld in Full**.

ODNI withheld in full 21 records located in its search for documents responsive to
subpart 3 of DF-2012-00090.  All 21 were withheld in full because they pertain to "intelligence
sources and methods," including the names of specific datasets and data provider agencies as
well as other "bits of information that would provide insights into the particular sources and
methods relied upon by NCTC analysts to produce terrorist intelligence reports, generate law
enforcement investigative leads," and carry out other counterterrorism activities.  For this reason,
the documents are protected from release by Exemptions 3 and 7(E).  *See* Ewing Decl. at ¶¶ 54-
58, 78-80.  Further, all 21 of these documents are draft documents that remain "subject to
change," including "edit[ing]," "refine[ment]," and "correct[ion]," *id.* at ¶ 67, while full

investigations are conducted.  These documents are also pre-decisional draft documents that contain "deliberative discussions among ODNI employees regarding possible approaches to take," "candid internal discussions," and "recommendations for actions."  *Id.*  For this reason, the documents were also withheld in full as deliberative process material protected by Exemption 5:

- 11 of these records are one-page documents described as "Deletion Issue Trackers." Ewing Decl. at ¶ 37(c)(ii).  These documents describe instances where "records in specific data-sets were possibly not deleted on time."  *Id.* at ¶ 56.  In addition to Exemptions 3, 5, and 7(E), one Deletion Issue Tracker was denied in full because it contained a classified dataset name and data provider agency identifying "a human intelligence collection database," "the size and scope" of the database, and the name of an associated, "highly sensitive IC agency."  Ewing Decl. at ¶¶ 37(c)(ii), 45.  Information in three Deletion Issue Trackers was also withheld in part based on Exemption 6 and information in one Deletion Issue Tracker was withheld in part based on Exemption 2. *Id.* at ¶¶37(c)(ii), 49, 72.

- Four of these records, totaling eight pages, are described as "Deletion Issue Reports." Ewing Decl. at ¶¶ 37(c)(iii), 56.  Like "Deletion Issue Trackers," these documents describe instances where records were possibly not deleted on time, but go into greater detail.  *Id.*  In addition to Exemptions 3, 5, and 7(E), portions of all four of these documents were withheld pursuant to Exemption 6 and portions of one of these documents were withheld pursuant to Exemption 2.  *Id .*at ¶ ¶ 37(c)(iii), 49, 72.

- Six documents, totaling 19 pages, are described as "Deletion Issue Tracker emails," and are a version of the "Deletion Issue Trackers" used for issues considered to be less consequential than those in "Deletion Issue Trackers."  Ewing Decl. at ¶ 78.  In addition to Exemptions 3, 5, and 7(E), these six documents also contained information protected by Exemptions 2 and 6, Ewing Decl. at ¶ 37(c)(iv), including internal agency email addresses, phone numbers, and the names of specific internal shared drives and URL links. *Id.* at ¶ 49, 72.

## ARGUMENT

## DEFENDANT HAS COMPLIED
## WITH  FOIA AND IS ENTITLED TO SUMMARY JUDGMENT

### I.  STATUTORY STANDARDS

### A.    The  Freedom of Information Act

FOIA's "basic purpose" reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John  Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).  "Congress recognized, however, that public disclosure is not always in the public interest." *CIA v. Sims*, 471 U.S. 159, 166–67 (1985).  Accordingly, in passing FOIA, "Congress sought 'to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy.'" *John Doe Agency*, 493 U.S. at 152 (quoting H.R. Rep. No. 89-1497, at 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423).  As the D.C. Circuit has recognized, "FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003) (citing *John Doe Agency*, 493 U.S. at 152).

When conducting a search for records responsive to a FOIA request, an agency "must make 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  The "adequacy of an agency's search is measured by a standard of reasonableness," *Davis v. Dep't of Justice*, 460 F.3d 92, 105 (D.C. Cir. 2006), and may be established by "reasonably detailed, nonconclusory affidavits describing [the agency's efforts." *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006).  An affidavit can meet this standard by "setting forth the search terms and the type of search performed, and

averring that all files likely to contain responsive materials (if such records exist) were searched," *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Oglesby*, 920 F.2d at 68).  The Court must evaluate not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Steinberg*, 23 F.3d at 551 (quoting *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

      Consistent with these principles, an agency's "failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam).  In evaluating the adequacy of a search, courts recognize that "[a]gency affidavits enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents." *Ground Saucer Watch v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981); *see Baker & Hostetler*, 473 F.2d at 318; *Goland v. CIA*, 607 F.2d 339, 352–53 (D.C. Cir. 1978).  A plaintiff therefore bears an "evidentiary burden" to "present evidence rebutting the agency's initial showing of a good faith search." *See Wilson v. DEA*, 414 F. Supp. 2d 5, 12 (D.D.C. 2006) (citing *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993); *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351–52 (D.C. Cir. 1983)).

      FOIA mandates disclosure of agency records unless the requested information falls within one of nine enumerated exemptions. *See* 5 U.S.C. § 552(b).  "A district court only has *jurisdiction* to compel an agency to disclose *improperly withheld* agency records," i.e., records that do "not fall within an exemption." *Minier v. CIA*, 88 F.3d 796, 803 (9th Cir. 1996) (emphasis in original); *see also* 5 U.S.C. § 552(a)(4)(B) (providing the district court with jurisdiction only "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant"); *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) ("Under 5 U.S.C. § 552(a)(4)(B)[,] federal jurisdiction is dependent upon a showing that an agency has (1)

'improperly' (2) 'withheld' (3) 'agency records.'").  FOIA's statutory exemptions "are intended to have meaningful reach and application."  *John Doe Agency*, 493 U.S. at 152.

Most FOIA actions are resolved on summary judgment.  *See Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007).  At summary judgment, the government bears the burden of proving that any withheld information falls within the exemptions it invokes. *See* 5 U.S.C. § 552(a)(4)(B); *King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987).  A court may grant summary judgment to the government based entirely on information set forth in agency affidavits or declarations that "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

**B.      Special Considerations in National Security Cases**

ODNI has invoked Exemptions 1 and 3 as a basis for withholding certain information from Plaintiff.  Information withheld on the basis of Exemption 1 and Exemption 3 often "implicat[es] national security, a uniquely executive purview." *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 926–27 (D.C. Cir. 2003).  While courts review de novo an agency's withholding of information pursuant to a FOIA request, "de novo review in FOIA cases is not everywhere alike." *Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987).  Although de novo review calls for "an objective, independent judicial determination," courts nonetheless defer to an agency's determination in the national security context, acknowledging that "the executive ha[s] unique insights into what adverse [e]ffects might occur as a result of public disclosure of a particular classified record." *Ray v. Turner,* 587 F.2d 1187, 1194 (D.C. Cir. 1978) (internal quotation marks omitted).  Courts have specifically recognized the "propriety of deference to the executive in the context of FOIA claims which

implicate national security." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926-27 (citing *Zadvydas v. Davis*, 533 U.S. 678, 696 (2001)).

Accordingly, courts have "consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927; *see Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) ("Today we reaffirm our deferential posture in FOIA cases regarding the 'uniquely executive purview' of national security."). "[I]n the national security context," therefore, "the reviewing court must give 'substantial weight'" to agency declarations. *ACLU v. Dep't of Justice*, 265 F. Supp. 2d 20, 27 (D.D.C. 2003) (quoting *King*, 830 F.2d at 217); *see Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999) (stating that because "courts have little expertise in either international diplomacy or counterintelligence operations, we are in no position to dismiss the CIA's facially reasonable concerns" about the harm that disclosure could cause to national security); *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) (holding that the district court erred in "perform[ing] its own calculus as to whether or not harm to the national security or to intelligence sources and methods would result from disclosure"). In according such deference, "a reviewing court must take into account . . . that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (internal quotation marks omitted).

## II.     ODNI IS ENTITLED TO SUMMARY JUDGMENT

In response to Plaintiff's requests, ODNI conducted a thorough search reasonably calculated to locate all responsive records subject to FOIA. ODNI located 29 documents, totaling 212 pages, and released eight documents in part after withholding information properly exempt under FOIA. Ewing Decl. at ¶¶ 36-37. The other 21 documents were withheld in full as non-segregable, exempt information. *Id.* Because ODNI conducted an adequate search and,

as demonstrated by its declaration, withheld information that logically falls within applicable

exemptions, ODNI is entitled to judgment as a matter of law.

**A.      ODNI conducted an adequate search for documents.**

As described in the Declaration of Mark Ewing, ODNI's Chief FOIA Officer, ODNI

conducted a broad search that could reasonably be expected to uncover records responsive to

Plaintiff's request for information, as narrowed by the October 12, 2012 agreement. Because that

search was legally adequate and conducted in good faith, it satisfied ODNI's statutory

obligations, regardless of the results of the search. *See Iturralde v. Comptroller of Currency*, 315

F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not

by the fruits of the search, but by the appropriateness of the methods used to carry out the

search.").

ODNI Information and Data Management Group ("IDMG") coordinates searches in

response to FOIA requests.  Ewing Decl. ¶ 32.  IDMG "identified all offices within ODNI likely

to possess records responsive to Plaintiff's requests" based on their duties and responsibilities,

and concluded that eight offices were "reasonably likely" to have had individual employees

"involved in the effort to devise and implement" the Revised AG Guidelines.  *Id.*  Accordingly,

IDMG  tasked  five offices in NCTC (Missions Systems, Information Sharing Program and

Policy, Civil Liberties and Privacy, the Executive Secretariat, and Legal) and three ODNI offices

(the Executive Secretariat, the Office of the General Counsel, and the Civil Liberties and Privacy

Office) with conducting searches for responsive records.  *Id.*  IDMG also ruled out all "other

offices within the ODNI," including other offices within NCTC, as not reasonably "expected to

possess responsive documents."  *Id.*  The identification and selection of these eight offices to be

searched was "reasonably expected to produce the information requested" and is thus an

adequate search for responsive records.  *Nation Magazine*, 71 F.3d at 890.

Within each of these eight offices, individuals "were provided copies of and a summary

of the requests and asked to search their electronic and hard copy files for responsive records."

Ewing Decl. at ¶ 33.  IDMG directed individuals to search for documents between the dates of

March 22, 2012 (the date of implementation of the Revised AG Guidelines) and the date of the

search, October 26, 2012.  Most of these individuals notified IDMG that they had filed

documents related to the Revised AG Guidelines into "known repositories and folders in both

their classified and unclassified email accounts and shared drives," or retained them in hard copy,

and that a separate search using search terms would be unnecessary.  *Id.*  Nevertheless, several

individuals (in an effort to be "comprehensive"), also conducted electronic searches using search

terms related to the Revised AG Guidelines.  *Id.*  An IDMG FOIA analyst familiar with the

requests then conducted an "analysis and review of the documents located," and concluded that

the responsive documents did not indicate that a further search of other "components, offices, or

individuals within the ODNI would reasonably be expected to locate additional responsive

documents."  *Id.* at  ¶ 34. This multilayered review plainly satisfies the requirement that ODNI

conduct a reasonable search.

       The limited number of responsive documents located in these searches does not undercut

the conclusion that ODNI adequately searched for responsive documents.  As explained *supra*,

"the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the

appropriateness of the methods used to carry out the search." *Iturralde*, 315 F. 3d  at 315.  In this

case, moreover, the identification of only 29 documents through ODNI's searches is hardly

surprising, given that as of the search date, NCTC was still "in the process of developing,

refining, and finalizing the new safeguards and compliance mechanisms," associated with the

Revised AG guidelines and thus "had not yet implemented" the Revised AG guidelines fully.

Ewing Decl. at ¶ 35.  Similarly, NCTC was still "renegotiating its information-sharing

agreements" with data provider agencies to comport with the Revised AG guidelines.  *Id.*  Under

these circumstances, the limited number of responsive, final documents located by ODNI is not

indicative of any shortcoming in ODNI's reasonable search.

B.     **ODNI Properly Asserted Exemptions**

As demonstrated by Mr. Ewing's declaration, ODNI appropriately withheld information from the released records that logically falls within one or more of Exemptions 1, 2, 3, 5, 6, and 7(E).

1.     **ODNI properly invoked FOIA Exemption 1.**

As explained above, FOIA Exemption 1 protects from disclosure records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy, and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).  An agency establishes that it has properly withheld information under Exemption 1 if it demonstrates that it has met the procedural and substantive classification requirements of E.O. 13526 with respect to the withheld information.  As noted above, the Court must give "substantial weight" to agency affidavits detailing classified materials, *King*, 830 F.2d at 217, and must defer to the expertise of agencies involved in national security and foreign policy. *See Frugone*, 169 F.3d at 775; *Fitzgibbon*, 911 F.2d at 766.

ODNI withheld certain classified information in seven documents released in part to Plaintiff.  ODNI also withheld in full another document because that document contained classified information.  As set forth in Mr. Ewing's declaration, Mr. Ewing, as an original classification authority, *see* Ewing Decl. at ¶ 2, personally considered all of the information ODNI withheld from the seven records released in part and the document ODNI withheld in full pursuant to FOIA Exemption 1.  Ewing Decl. at ¶ 46.  Upon review, Mr. Ewing concluded that the withheld information is currently and properly classified at the SECRET level, consistent with the requirements of E.O. 13526, as information pertaining to "intelligence activities (including covert action), intelligence sources or methods, or cryptology."  *See* Ewing Decl. at ¶¶ 40, 46; E.O. 13526 § 1.4(c).

As described by Mr. Ewing, the types of information withheld pursuant to FOIA Exemption 1 satisfy the applicable standards.  Specifically, with respect to ODNI's withholdings pursuant to FOIA Exemption 1 from the response to FOIA request DF-2012-00059, ODNI

concluded that the two documents relating to "data ingestion" for the Counterterrorism Data

Layer ("CTDL"), an NCTC database, contained "intelligence analysis [and] specific information

regarding sensitive or classified collection systems" were classified at the SECRET level.  Ewing

Decl. at ¶ 41.  ODNI also concluded that names of specific data-sets and data provider agencies

listed in the document titled "CT Resource Council" were properly classified at the SECRET

level.  *Id.*  Release of this classified information would disclose "the collection methods and

information sharing arrangements" that NCTC analysts use to create intelligence reports,

generate law enforcement investigative leads, and identify specific individuals as potential

threats.  *Id.*  Disclosure would also "seriously degrade the overall effectiveness of U.S.

counterterrorism activities" because the names of the "specific datasets" used by NCTC would

allow "potential terrorists . . . to develop effective countermeasures and circumvent detection,"

ultimately assisting their efforts to slip through "international ports of entry into the United

States."[4]

Within the four responsive documents produced pursuant to Plaintiff's request DF-2012-

00090, item #2, ODNI determined that portions of two documents should be withheld pursuant

to Exemption 1.  Ewing Decl. at  ¶ 42.  On one page of a training course titled "NCTC

Guidelines: Understanding Acquisition, Retention, and Dissemination . . .", ODNI identified as

SECRET examples of intelligence analysis and the name of a classified dataset. *Id.*  In the "Data

Access and Use, NCTC" document, also a training course, ODNI identified and withheld

instances of intelligence analysis, specific information about sensitive or classified collection

systems, and the names of classified data-sets on six of the 66 pages.  *Id.*  As Mr. Ewing's

declaration explains, these materials are currently and properly classified as SECRET because

disclosure could reasonably be expected to cause serious damage to national security as

---

[4] Mr. Ewing further elaborates, explaining that terrorist organizations "have demonstrated the capacity to gather and
analyze information in the public domain and the ability to deduce the intelligence methods employed by the
United States," and that for this reason, "the totality of datasets used by NCTC has not been publicly revealed
and must remain classified." Ewing Decl. at  ¶ 41.

described above or by revealing "techniques associated with authorized electronic surveillance and clandestine human intelligence collection." *Id.*

In response to item 3 of FOIA request DF-2012-00090, ODNI identified as SECRET a limited and segregable portion of two documents. Ewing Decl. at ¶ 43. First, in a compliance assessment titled in part "Delayed Deletion of APIS data," the "number of records NCTC receives weekly" from a DHS dataset on passengers was withheld as properly classified because disclosure of this statistical data "would reveal the extent, duration, and frequency of NCTC reviews of travel records," thus providing potential terrorists with "insights into the process and procedures" used by NCTC to analyze this information. *Id.* at ¶ 4. Second, in the document titled "Deletion Issue Tracker," ODNI concluded that a portion of the information in the document revealed a classified data set name and data provider agency as well as "details on the size and scope of records available" in the data-set and "information concerning assessments of security systems that indicate vulnerabilities or could aid in penetration of the system." *Id.* at ¶¶ 43-45. Because release of this information reasonably could be expected to cause serious damage to the national security and is thus properly classified pursuant to EO 13526, ODNI withheld this information as classified. *Id.* at ¶¶ 45-46.

As Mr. Ewing's declaration, entitled to "substantial weight" and deference*, see King*, 830 F.2d at 217, explains, the classified information withheld pursuant to Exemption 1 is properly classified pursuant to Executive Order 13526. Release of this information reasonably could be expected to cause serious damage to the national security. For these reasons, the Court should enter judgment for ODNI on information withheld pursuant to Exemption 1.

2. **ODNI properly invoked Exemption 2**.

Exemption 2 of the FOIA protects from release information that is "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). "Among other things, Exemption 2 covers internal information – 'that is, the agency must typically keep the records to itself for its own use.'" *Citizens for Responsibility and Ethics in Washington ("CREW") v. Dep't of Justice*, 870 F. Supp. 2d 70, 83 (D.D.C. 2012) (Leon, J.) (*quoting Milner v. Dep't of Navy*, 131

S. Ct. 1259, 1265 n.4 (2011)).   Numerous courts, including the D.C. Circuit, once recognized two subcategories within Exemption 2: the "internal personnel rules and practices" information discussed here, labeled "Low 2"; and "records whose disclosure would risk circumvention of the law," labeled "High 2."  *See Milner*, 131 S. Ct. at 1263 (*citing, e.g.*, *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir.1992)).  In 2011, the Supreme Court concluded in *Milner*, however, that materials previously withheld under "High 2" should be considered under other exemptions, if at all.  *See Milner*, 131 S.Ct. at 1263-65.  At the same time, the Supreme Court reaffirmed the validity of the internal rules and practices exemption, holding that "Low 2 is all of 2 (and that High 2 is not 2 at all[.])" *Id.* at 1265. [5]

Thus, following *Milner*, information that may be withheld pursuant to Exemption 2 includes "secure and nonsecure internal phone numbers," along with "trivial administrative data such as file numbers, mail routing stamps . . . and other administrative markings," and "message addresses." *See CREW*, 870 F. Supp. 2d at 83 (phone numbers); *Moayedi v. U.S. Customs and Border Prot.*, 510 F. Supp. 2d 73, 82 (D.D.C. 2007) (administrative data properly withheld pursuant to "Low 2") (Walton, J.); *Miller v. Dep't of Justice*, 562 F. Supp. 2d 82, 110 (D.D.C. 2008) (Kennedy, J.) (internal addresses within scope of "Low 2"); *but see Institute for Policy Studies v. CIA*,  885 F. Supp. 2d 120, 150 (D.D.C. 2012) (Lamberth, J.) (applying *Milner* to reach contrary result).  Here, Mr. Ewing's declaration and precedents considering information similar to that withheld here under pre-*Milner* "Low 2" or those subsequent to *Milner* demonstrate that the materials withheld by ODNI satisfy this standard. [6]

---

[5] The Courts of Appeals have had limited opportunities to address the scope of Exemption 2 following *Milner*, and district court opinions and secondary sources provide conflicting guidance.  *Compare, e.g.*, *Institute for Policy Studies*, 885 F. Supp. 2d at 150 (requiring "[n]arrow construal" of Exemption 2 to exclude even previous "Low 2" material *with CREW*, 870 F. Supp. 2d at 83 (affirming application of Exemption 2 to "[i]nformation that traditionally fell within the 'Low 2' Exemption")*and* OIP Guidance: Exemption 2 After the Supreme Court's Ruling in *Milner* . . ., Dep't of Justice Office of Information Policy, *available at* http://www.justice.gov/oip/foiapost/milner-navy.pdf (last visited May 8, 2013) (articulating a three-part test based on *Milner*).

[6] Even under an interpretation of *Milner* that rejects pre-*Milner* "Low 2" precedent, ODNI's Exemption 2 withholdings remain proper.  The subparts of EPIC's request DF-2012-00090 in response to which Exemption 2 is asserted, sought "training materials" and information about the "monitoring, recording, and auditing" of ODNI personnel, and the Exemption 2 material is accordingly related to "internal personnel rules and practices" as required by the text of 5 U.S.C. § 552(b)(2).

Specifically, in processing for release the four documents determined responsive to item 2 of request DF-2012-00090, ODNI withheld portions of seven pages that contained "information related to ODNI personnel and their internal agency email addresses, phone numbers, room numbers, and website addresses." Ewing Decl. at ¶ 48. Similarly, in processing the 21 documents withheld in full from the response to item 3 of request DF-2012-00090, eight of the documents contained information protected by Exemption 2 as information related to internal agency email addresses, phone numbers, and the names of specific internal shared drives and URL links. *Id.* at ¶ 49.

All of this information fits within the category protected by Exemption 2. As Mr. Ewing's declaration states, the categories of information withheld under Exemption 2 "relate solely to the ODNI's internal practices," and the disclosure of this information "would not serve any public interest." Ewing Decl. at ¶ 50. For this reason, internal telephone numbers have long been protected as part of Exemption 2 (under the exemption labeled as "Low 2" before the *Milner* decision) because such information "is of no public interest" and its release could "subject ODNI employees to harassing communications that could disrupt official business." Ewing Decl. at ¶ 50; *see Skinner v. Dep't of Justice*, 744 F. Supp. 2d 185, 201-02 (D.D.C. 2010) (Friedman, J.) ("telephone numbers fall within the scope of Exemption 2, and properly are withheld as "low 2" exempt information"). Relying on *Milner* in his opinion in *CREW*, Judge Leon concluded that "internal telephone numbers . . . fall squarely within this Exemption." 870 F. Supp. 2d at 83; *but see Brown v. FBI*, 873 F. Supp. 2d 388, 400 (D.D.C. 2012) (Lamberth, J.) (rejecting Exemption 2's application to internal phone numbers in wake of *Milner*). The room numbers and internal email addresses withheld by ODNI are a close analogue to phone numbers: internal information used as a personnel and resource management tool to facilitate interactions and communication among personnel. *See Hale v. Dep't of Justice,* 973 F.2d 894, 902 (10th Cir.1992), *vacated & remanded on other grounds*, 509 U.S. 918 (1993) (room numbers properly withheld); *Miller*, 562 F. Supp. 2d at 110 (internal addresses). Similarly, many courts, including judges of this Court, have applied Exemption 2 (analyzing whether the pre-*Milner*, "Low 2,"

exemption applied), to protect website addresses and URLs, of which the names and addresses of "internal shared drives" are nothing more than a special, entirely-internal case. *See, e.g.*, *Sussman v. U.S. Marshals Service*, 734 F. Supp. 2d 138, 144 (D.D.C. 2010) (Kennedy, J.); *Holt v. Dep't of Justice*, 734 F. Supp. 2d 28, 39-40 (D.D.C. 2010) (Walton, J.).   For these reasons, ODNI properly withheld names, phone numbers, website addresses, and similar items as "internal practices" information protected from release by Exemption 2.

### 3.   ODNI properly invoked Exemption 3.

Exemption 3 of the FOIA permits agencies to withhold from disclosure records that are: "specifically exempted from disclosure by statute . . . provided that such statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3) as amended.  In analyzing the propriety of a withholding taken pursuant to Exemption 3, the Court need not examine "the detailed factual contents of specific documents" in which withholdings have been taken.  *Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007).  Rather, "'the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.'  It is particularly important to protect intelligence sources and methods from public disclosure."  *Id.* (quoting *Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C.Cir.1987)).

Here, ODNI first invokes Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 403-1(i)(1), which requires that the DNI "shall protect intelligence sources and methods from unauthorized disclosure."  *See* Ewing Decl. at  ¶ 52.  It is well-established that Section 102A qualifies as a withholding statute for the purposes of Exemption 3.  *See, e.g., ACLU v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Mobley v. C.I.A.,* --- F.Supp.2d ----, 2013 WL 452932 (D.D.C. 2013) (Howell, J.).  Indeed, the Supreme Court has recognized the "wide-ranging authority" provided by the National Security Act to protect intelligence sources and methods, noting that, rather than limit the scope of the Act, "Congress simply and pointedly

protected all sources of intelligence that provide, or are engaged to provide, information the

[CIA] needs" to gather and analyze intelligence.  *CIA v. Sims*, 471 U.S. 159, 169-70, 177 (1985).

In his declaration, Mr. Ewing establishes that the information withheld by ODNI on all 29

documents "was protected from disclosure under the sources and methods provision."  Ewing

Decl. at ¶ 53.  The 21 documents withheld in full pursuant to Exemption 3 are "Deletion Issue

Trackers," "Deletion Issue Reports," and "Deletion Issue Tracker Emails," which are used to

evaluate instances in which "records in specific datasets were possibly not deleted on time" (in

accordance with an agreement with a data provider agency) and were thus identified in ODNI's

searches for documents responsive to Item 3 of Request 2012-00090.  *Id.* at  ¶¶ 55-57.  These

documents were denied in full because the records consist entirely of information containing

sensitive and/or classified sources and methods information, specifically including dates that

records were obtained and deleted by NCTC, the number of records deleted, and information

about who has access to the dataset and the nature of the issue.  *Id.*   All of this information

would reveal sensitive and/or classified sources and methods information, which, if revealed,

would likely assist "those who would seek to penetrate, detect, prevent, or damage" NCTC

intelligence operations.  *Id.* at ¶ 53.  As explained above, even the release of pieces of

information on these documents, innocuous thought they may seem individually, "would assist

adversaries in piecing together bits of information that would provide insights into the particular

sources and methods relied upon by NCTC analysts."  *Id.* at  ¶ 54.   For this reason, as Mr.

Ewing explains, the entirety of these documents must be withheld as protected sources and

methods information, and ODNI's withholding in full is unquestionably proper pursuant to

Exemption 3 and the National Security Act.  Ewing Decl. at  ¶¶ 54-57;  *see generally Schoenman

v. FBI*, 841 F. Supp. 2d 69, 83-84 (D.D.C. 2012) (holding that "information pertaining to . . .

dissemination-control markings, . . . file numbers, and internal organizational data" fell within

"intelligence sources and methods" information properly withheld pursuant to Exemption 3);

*ACLU v. Dep't of Defense*, 628 F.3d 612, 626 (D.C. Cir. 2011) (affirming district court's reliance

on agency declaration that "redacted information described the actual, operational implementation of . . . 'sources and methods'"). [7]

ODNI also withheld information on 17 documents pursuant to Exemption 3 and the Central Intelligence Agency Act of 1949, 50 U.S.C. § 403g, as amended ("CIA Act"). Ewing Decl. at ¶ 59. Section 6 of the CIA Act provides an exemption from "any other law" that would otherwise require "disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel" employed by CIA. 50 U.S.C. § 403g. "It is well-established" that this Act and section "fall[s] within the ambit of Exemption 3." *Schoenman*, 841 F. Supp. 2d at 84 (citing cases). Although the text of 403g specifically mentions the CIA and not ODNI, Section 102A(m)(1) of the National Security Act makes clear that the Director of National Intelligence "may exercise with respect to the personnel of the [ODNI] any authority" extended to the CIA by 50 U.S.C. § 403 *et seq*, of which this section is a part. *See* 50 U.S.C. § 403-1, as amended; *cf. Mobley*, --- F.Supp. 2d at --- at *23 (discussing authorities extended from the CIA to the DNI by amendments to the National Security Act).

Mr. Ewing's declaration demonstrates that these withholdings are proper. ODNI withheld three categories of information pursuant to the CIA Act and Exemption 3: "ODNI employees' names, e-mail addresses, and phone numbers." Ewing Decl. at ¶ 59. The CIA Act "plainly protects" this information, "including employee names, titles . . . telephone numbers, fax numbers, e-mail addresses, and street addresses." *James Madison Project v. CIA*, 607 F. Supp. 2d 109, 126 (D.D.C. 2009) (Urbina, J.). Because the CIA Act is an applicable statute for the purposes of Exemption 3 and the information withheld falls within its scope, judgment for ODNI is appropriate on these withholdings.

---

[7] Mr. Ewing also explains that data-set names on six documents released in part (all except "NCTC Civil Liberties and Privacy Office: Protection of Privacy and Civil Liberties" and "PA101: Privacy Act Safeguarding PI") have been withheld pursuant to Exemption 3 and the National Security Act. Ewing Decl. at ¶ 54. As explained in the discussion of withholdings of data set names pursuant to Exemption 1, *supra*, public disclosure of data-set names "would provide insights into the particular sources and methods relied upon by NCTC analysts to produce terrorist intelligence reports, generate law enforcement investigative leads," and accomplish other objectives. *Id.* at ¶ 54. Thus, data-set names are also appropriately withheld pursuant to the National Security Act and Exemption 3.

Finally, ODNI withheld information on six documents pursuant to Exemption 3 and the Bank Secrecy Act, 31 U.S.C. § 5319 ("BSA").   Ewing Decl. at ¶ 58.   The BSA "permits the Secretary of the Treasury to require financial institutions to report suspicious transactions." *Cuban v. SEC*, 795 F. Supp. 2d 43, 62 (D.D.C. 2011) (Walton, J.) (*citing* 31 U.S.C. § 5318(g)). Another provision of the BSA specifies that "a report and records of reports [under the BSA] are exempt from disclosure under section 552 of title 5 . . . ." 31 U.S.C. § 5319.   "In accordance with the requirements of Exemption 3(A), section 5319 is a separate statute from the FOIA that explicitly prohibits disclosure under the FOIA."   *Cuban*, 795 F. Supp. 2d at 63; *accord Berger v. IRS*, 487 F. Supp. 2d 482 (D.N.J. 2007) ("The few courts to address the issue have reached the natural conclusion that § 5319 qualifies as an exempting statute under Exemption 3.").   As set forth in Mr. Ewing's declaration, two "Deletion Issue Trackers" and two "Deletion Issue Reports" withheld in full from ODNI's response to the third subpart of request DF-2012-00090 and information in two documents released in part in response to request DF-2012-00059 fall within the ambit of 31 U.S.C. § 5319.   Ewing Decl. at ¶ 58.   For this reason, ODNI appropriately withheld this information pursuant to Exemption 3 and should be granted judgment on those withholdings.

### 4. ODNI properly invoked Exemption 5.

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."   5 U.S.C. § 552(b)(5).   Records are exempt from disclosure if they would be "normally privileged in the civil discovery context."   *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).   Exemption 5 thus incorporates the privileges that are available to an agency in civil litigation, including the deliberative process privilege.   *Id.* at 148-50; *Rockwell Int'l. Corp. v. Dep't of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001).   ODNI properly withheld deliberative process privileged information under Exemption 5.

The deliberative process privilege protects intra- or inter-agency documents that are "both predecisional and deliberative," *Mapother v. DOJ*, 3 F.3d 1533, 1537 (D.C. Cir. 1993), by

protecting "'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Loving v. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008) (*quoting Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).  "In deciding whether a document should be protected by the privilege, [courts] look to whether the document is 'predecisional'," i.e., "whether it was generated before the adoption of an agency policy," and "whether the document is deliberative," i.e., "whether it reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980).  "Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process." *Sears*, 421 U.S. at 151 n.18.

Exemption 5 "was intended to protect not simply deliberative *material*, but also the deliberative *process* of agencies." *Montrose Chem. Corp. of California v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974) (emphasis added).  Thus, even factual material is exempt under Exemption 5 if disclosure "would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."  *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (citing *Dudman Commc'n. Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987)).  "There should be considerable deference to the [agency's] judgment as to what constitutes . . . part of the agency give-and-take — of the deliberative process — by which the decision itself is made" because the agency is best situated "to know what confidentiality is needed to prevent injury to the quality of agency decisions."  *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (internal quotations and citations omitted).

The October 12, 2012 agreement excluded many pre-decisional and deliberative documents from the scope of EPIC's FOIA requests.  Nevertheless, as Mr. Ewing's declaration explains, three of the documents identified as responsive and released in part incorporated

information that was pre-decisional and could be properly withheld pursuant to Exemption 5.[8]

Ewing Decl. at ¶ 66.   In these documents, ODNI withheld information about "data-sets that, at

the time, were 'targeted' for negotiations with data provider agencies," but were not ultimately

incorporated into the CTDL.  *Id.*  Thus, although the remainder of the document is not

deliberative, the inclusion of these dataset names "reflect[s] deliberations" underway as a part of

a process to determine what datasets would become a part of the CTDL.  *Id.*  Release of this

information – even as part of documents separate from the deliberations – would therefore

"expose" an important part of ODNI's "decisionmaking process" and impair its future decision-

making.[9]  *See Quarles*, 893 F.2d at 392.

In one of the partially-released documents, ODNI also withheld information about data-

sets to be "'researched' to determine feasibility" of incorporation into the CTDL and that

described "discussions with potential data provider agencies." Ewing Decl. at ¶ 66.  This

information about these discussions and the processes that ODNI follows in order to decide what

datasets to ingest into the CTDL would plainly reveal substantive information about ODNI's

decision-making process and is therefore validly withheld from release pursuant to Exemption 5.

ODNI also denied 21 documents in full pursuant to Exemption 5 because these

documents were pre-decisional draft documents describing possible, but not certain, compliance

issues.  Ewing Decl. at ¶ 67.  "[D]raft documents, by their very nature, are typically

predecisional and deliberative, because they reflect only the tentative view of their authors;

views that might be altered or rejected upon further deliberation either by their authors or by

superiors."  *In re Apollo Grp Inc. Sec. Litigation*, 251 F.R.D. 12, 31 (D.D.C. 2008) (internal

quotations omitted) (describing deliberative process outside the FOIA context).  Accordingly,

---

[8] Because the October 12, 2012 agreement narrows the scope of EPIC's request based on "documents" and "records" rather than on information, ODNI concluded that, to the extent it located responsive records containing predecisional information, it would be appropriate to produce the segregable portions of those documents rather than determine that the entire document was non-responsive.
[9] As explained elsewhere, these data-set names and data provider agencies are also protected from disclosure pursuant to Exemptions 1, 3, and 7(E).

"drafts are commonly found exempt under the deliberative process exemption." *People for the American Way Found. v. National Park Serv.*, 503 F. Supp. 2d 284, 303 (D.D.C. 2007).

The purpose of these compliance documents is to provide the baseline for an investigation by the NCTC compliance team associated decision-makers to begin review of whether a "compliance incident" warrants a substantive policy response.  Ewing Decl. at ¶ 67. As such, the withheld documents are drafts that are subject to editing by other ODNI components, "including the NCTC Civil Liberties and Privacy Office and NCTC Legal," and are "subject to change until a full investigation is concluded and a final compliance review is completed."  *Id.*  Because these documents are "generated before the adoption of an agency policy" to respond to the compliance incident, they are properly considered pre-decisional drafts. *Judicial Watch v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006).

To be sure, not all pre-decisional drafts "automatically obtain protection pursuant to [E]xemption 5." *EPIC v. DHS*, --- F. Supp. 2d ---, 2013 WL 829483 at * 9.  "Even if a document is a draft of what will become a final document, the court must also ascertain whether the document is deliberative in nature." *Id.*  By their nature, because these documents are provided to other ODNI components for editing, *see* Ewing Decl. at ¶ 67, they each constitute recommendations that "reflect[] the give-and-take of the consultative process" (or at least the "give").  *Id.*  Moreover, as Mr. Ewing explains, the documents also contain "deliberative discussions among ODNI employees regarding potential approaches to take with respect to potential deletion incidents; candid internal discussions and exchanges of opinion . . . and recommendations for actions."  *Id.*  "[R]elease of this information would discourage open and frank discussions among ODNI employees in the future," and the loss of frank, candid recommendations and information "would be extremely detrimental to the internal decision making process of the ODNI."  *Id.* at ¶¶ 67-68.  In short, these draft documents constitute core deliberative process material protected by Exemption 5.  ODNI's judgment that release of this information would compromise and cause injury to the agency's decision-making process is

entitled to deference and their decision to withhold these documents pursuant to FOIA Exemption 5 should be affirmed.  *See Chem. Mfrs. Ass'n*, 600 F. Supp. 118.

### 5.   ODNI properly invoked Exemption 6.

Exemption 6 exempts from compelled disclosure information about individuals in "personnel and medical and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has adopted a broad construction of the privacy interests protected by Exemption 6, *see Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989), and privacy is of particular importance in the FOIA context because disclosure under FOIA is tantamount to disclosure to the public at large.  *See Painting & Drywall Work Pres. Fund, Inc. v. HUD*, 936 F.2d 1300, 1302 (D.C. Cir. 1991). Where "individuals have a privacy interest in avoiding the harassment that could ensue following the disclosure of their personal information," withholding is warranted under Exemption 6 absent some "countervailing public interest that disclosure is likely to advance." *Island Film, S.A., v. Dep't of Treasury*, 869 F. Supp. 2d 123, 136 (D.D.C. 2012) (Roberts, J.).

Exemption 6 requires an agency to balance an individual's right to privacy against the public's interest in disclosure. *See Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976).  The agency must determine whether disclosure of the information would threaten a protectable privacy interest; if so, the agency must weigh that privacy interest against the public interest in disclosure, if any.  *See Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).  The "only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of FOIA,' which is contribut[ing] significantly to public understanding of the operations or activities of the government.'" *Dep't of Defense v. FLRA*, 510 U.S. 487, 495 (1994) (*quoting Reporters Comm.*, 489 U.S. at 775).  The requester bears the burden of demonstrating that the release of the withheld information would serve this interest. *See Carter v. Dep't of Commerce*, 830 F.2d 388, 391–92 & n.8 & n. 13 (D.C. Cir. 1987).

ODNI withheld the names, room numbers, email addresses, and phone numbers of ODNI employees pursuant to Exemption 6.  Ewing Decl. at ¶¶ 70-72.  On three of the documents released in part in response to request DF-2012-00090, ODNI names, phone numbers,  and similar information appear and have been withheld.  Ewing Decl. at ¶ 71.  Similarly, Exemption 6 protects from release names, phone numbers, and email addresses appearing in 13 of the documents that ODNI has withheld in full pursuant to other FOIA exemptions.  *Id.* at ¶ 72.  Mr. Ewing explains that this information has been withheld because  "[p]ublicly disclosing their names and other identifiable information, including phone numbers, could subject them to unnecessary public scrutiny, contact via unsolicited phone calls and/or emails, harassment, [and] hostility from those who object to particular policies that they are merely carrying out."  Ewing Decl. at ¶ 74.  ODNI's Exemption 6 withholdings are proper because "[t]he privacy interest of civilian federal employees includes the right to control information related to themselves and to avoid disclosures that 'could conceivably subject them to annoyance or harassment in either their official or private lives.'" *EPIC v. DHS*, 384 F. Supp. 2d 100, 116 (D.D.C. 2005) (Urbina, J.) (*quoting Lesar v. Dep't of Justice*, 636 F.2d 472 (D.C. Cir. 1980)) (affirming Exemption 6 withholding of names and identifying information where, as here, employees are involved in carrying out counterterrorism policies "that may be unpopular").

Mr. Ewing also explains that release of the names and other identifying information of ODNI employees could have national security implications as well.  Given ODNI's cornerstone role in the intelligence community, "ODNI employees . . . have a heightened privacy interest due to the nature of their work," and release of their names could lead to "targeting by foreign intelligence services."  Ewing Decl. at ¶ 74.  As a result, release of their identifying information could compromise their effectiveness in carrying out their intelligence duties.  *Id.*  Against these strong privacy interests, Mr. Ewing explains that this information sheds no light on the only proper public benefit of disclosure under the FOIA: "understanding the operations or activities of the U.S. Government."  *Id*; *see Reporters Comm.*, 489 U.S. at 775.  ODNI therefore appropriately determined that the disclosure of these ODNI personnel's names and contact

information would constitute a clearly unwarranted invasion of their personal privacy.  *See Island Film*, 869 F. Supp. 2d at 136 (risk of "unwarranted public scrutiny" or "phone calls to elicit sensitive information" demonstrates need to withhold names under Exemption 6); *Schoenman v. FBI*, 575 F. Supp. 2d 136, 161 (D.D.C. 2008) (recognizing "heightened interest in the personal privacy of DoD personnel" in light of national security risks).  Accordingly, this information was properly withheld under Exemption 6.

### 6.  ODNI properly invoked Exemption 7(E).

ODNI may withhold records or information under Exemption 7(E) if they were "compiled for law enforcement purposes," and if production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Exemption 7(E) thus generally protects those law-enforcement techniques and procedures that are "not well-known to the public."  *See Judicial Watch, Inc. v. Dep't of Commerce*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004); *see also Albuquerque Publ'g Co. v. Dep't of Justice*, 726 F. Supp. 851, 857 (D.D.C. 1989) (Exemption 7(E) applies to "techniques and procedures generally unknown to the public").

ODNI has exempted the names of sensitive and/or classified data-sets and the names of the agencies providing those data-sets from 24 documents produced in response to EPIC's requests.   Ewing Decl. at ¶ 76.  To justify these withholdings, ODNI must first establish the threshold issue, that the records at issue were compiled for law enforcement purposes, s*ee Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982), which it may do by establishing a substantial nexus between the information withheld and one of its law enforcement duties.  *See McCann v. HHS*, 828 F. Supp. 2d 317, 323 (D.D.C. 2011) (Boasberg, J.); *Pub. Emps. for Envtl. Responsibiliyt ("PEER") v. U.S. Section Int'l Boundary & Water Comm'n*, 839 F. Supp. 2d 304, 326 (D.D.C. 2012).

As Mr. Ewing explains, although NCTC is not a "law enforcement agency," it does "perform work related to law enforcement investigations or prosecutions" pursuant to its

missions of "integrating all instruments of national power, including . . . law enforcement activities" for counterterrorism activities, to provide "all-source intelligence support" to law enforcement agencies, and to ensure that "such agencies have access to and receive intelligence needed to accomplish their assigned activities." Ewing Decl. at ¶ 77. Mr. Ewing further identifies NCTC's statutory responsibility to integrate "terrorist travel intelligence operations" with "law enforcement planning and operations" to "intercept terrorists" as one of the agency's law enforcement functions. *Id.* at ¶ 78. In part, NCTC carries out this mission by operating the "U.S. Government's central repository of information on international terrorist identities." *Id.* The datasets and analytic techniques used to analyze terrorist threats, identify terrorist targets, and incorporate them into NCTC databases is a critical technique and procedure used to support law enforcement investigations. *Id.* at ¶¶ 78-80 . Furthermore, NCTC's datasets are used to conduct other "analysis to support law enforcement investigations" and other aspects of homeland security. *Id.* at ¶ 79. This nexus between the data-sets and law enforcement investigations demonstrates that ODNI has satisfied the threshold issue for properly asserting Exemption 7.

Through Mr. Ewing's declaration, ODNI has also explained how release of the names of these data-sets would compromise a law enforcement technique or procedure. "The release of information about NCTC's use of certain datasets would reveal the details of techniques and methodologies used by NCTC that are not generally known to the public." Ewing Decl. at ¶ 79. "If known or suspected terrorists gained insights into what datasets are routinely reviewed by NCTC to develop essential background information . . . that knowledge will clearly assist them in efforts to develop tactics, techniques, and procedures for evading detection." *Id.* at ¶ 80. Given that NCTC combines its efforts with those of intelligence agencies and "law enforcement planning and operations" to "intercept terrorists," "to constrain terrorist mobility," and to disrupt terrorist financing, release of this information would disclose law enforcement techniques and procedures and compromise law enforcement effectiveness. *Id.* at ¶ 79. This information is therefore appropriately withheld pursuant to Exemption 7(E). *See Albuquerque Publ'g*, 726 F.

Supp. 857; *Concepcion v. U.S. Customs and Border Prot.*, --- F. Supp. 2d ---, 2012 WL 6019299 at *7 (disclosure of "the names of law enforcement databases" queried by CBP would disclose a method used to thwart the entry of terrorists to the United States); *cf. Vazquez v. Dep't of Justice*, 887 F. Supp. 2d 114, 117 (D.D.C. 2012) (recognizing the distinction between knowledge of the general existence of a law enforcement database, and the specific uses to which a database is put, the latter "constitut[ing] a procedure for law enforcement investigations covered by exemption 7(E).") (internal quotations omitted).

C.        **ODNI Has Released all Reasonably Segregable Information**.

Under FOIA, "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). An agency has no obligation to segregate non-exempt material that is so "inextricably intertwined" with exempt material that "the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981), abrogated on other grounds by *Church of Scientology of Calif. v. IRS*, 792 F.2d 153 (D.C. Cir. 1986); *see also Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220–21 (D.D.C. 2005) (same). A court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008) (internal citation omitted). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (citation omitted).

Here, ODNI has shown that it released all reasonably segregable material through the declaration of Mr. Ewing. As Mr. Ewing explained, "a line-by-line review was performed on all 29 documents," which determined that "all reasonably segregable, non-exempt information has

been disclosed." Ewing Decl. at ¶ 81.  *See Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776-77 (D.C. Cir. 2002) (holding that agency had demonstrated there was no reasonably segregable non-deliberative material when it had submitted an affidavit by an agency official confirming that "a line-by-line review of each document withheld in full [had] determined that 'no documents contained releasable information which could be reasonably segregated from the nonreleasable portions.'").  Moreover, Mr. Ewing specifically considered the question of the segregability in the context of the application of Exemption 5 to the 21 documents withheld in full.  Ewing Decl. at ¶ 68.  His analysis concluded that these withheld-in-full documents were "properly exempt in [] entirety under FOIA Exemption 5," and that "there is therefore no reasonably segregable information available for disclosure."  *Id.* Thus, for the 21 documents withheld in full, Mr. Ewing's declaration demonstrates that all of the material in those documents is protected by an applicable exemption.  Because there is no need for ODNI to "produce an edited document with little informational value," *Neufeld*, 646 F.2d at 666, ODNI's withholding of these documents in full is appropriate.

ODNI's conclusion that all reasonably segregable information has been released is further confirmed by the nature of the withheld material.  As explained *supra*  Part II.B.3, Exemption 3 protects the entirety of those documents because even the release of limited portions "would assist adversaries in piecing together bits of information that would provide insights into the particular sources and methods relied upon by NCTC analysts." Ewing Decl. at ¶ 54; *see supra* Part II.B.3.  For this reason, intelligence information, particularly that related to sources and methods, may be properly withheld as "inextricably intertwined" with any non-exempt information.  *See, e.g.*, *Ray v. Turner*, 468 F. Supp. 740 (D.D.C. 1979).

Similarly, with respect to the eight documents released in part, Mr. Ewing's segregability conclusion is borne out by the released documents themselves: redactions have been taken narrowly and only where specific information protected by Exemptions 1, 2, 3, 5, 6, and 7(E), explained in Mr. Ewing's declaration and outlined above, have been taken.  *See, e.g.*, *PEER v. EPA*, --- F. Supp. 2d --- 2013 WL 677672 at *9-*10 (D.D.C. 2013); *Skurow*, 892 F. Supp. 2d at

33

333-34.  Because ODNI has appropriately produced the information reasonably segregable from the material protected by exemptions to FOIA, the Court should grant judgment to ODNI.

## **CONCLUSION**

For the foregoing reasons, this Court should grant ODNI's motion for summary judgment.


Dated: May 10, 2013                                          Respectfully submitted,

                                                             STUART DELERY
                                                             Acting Assistant Attorney General

                                                             RONALD C. MACHEN JR.
                                                             United States Attorney
                                                             District of Columbia

                                                             ELIZABETH J. SHAPIRO
                                                             Deputy Branch Director,
                                                             Federal Programs Branch

                                                              _/s/ Eric Soskin_____
                                                             ERIC J. SOSKIN  (PA Bar No. 200663)
                                                             Trial Attorney
                                                             United States Department of Justice
                                                             Civil Division, Federal Programs Branch
                                                             20 Massachusetts Avenue, N.W.
                                                             Washington, D.C. 20530
                                                             Telephone: (202) 353-0533
                                                             Fax: (202) 305-8517
                                                             Email: eric.soskin@usdoj.gov

                                                             Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

ELECTRONIC PRIVACY INFORMATION      )
    CENTER,                                                      )
                                                )
                              Plaintiff,                     )          1:12-cv-1282 (JEB)
                                                )
                               vs.                                       )
                                                  )
OFFICE OF THE DIRECTOR OF                   )
NATIONAL INTELLIGENCE                       )
                                                 )
                                Defendant.                  )
_____)

**STATEMENT OF MATERIAL FACTS AS TO WHICH**
**THERE IS NO GENUINE ISSUE**

As required by Local Civil Rule 7.1(h), and in support of their Motion for Summary

Judgment, Defendant hereby makes the following statement of material facts as to which there is

no genuine issue.

1.       On March 28, 2012, Plaintiff submitted a request under the Freedom of Information Act

("FOIA") for "the 'priority list' of databases that the National Counterterrorism Center plans to

copy."  Ewing Decl. at ¶ 9.

    a.   ODNI numbered this request as DF-2012-00059. *Id.* at ¶ 10.

    b.   On June 8, 2012, Plaintiff appealed ODNI's failure to respond within 20 days. *Id.* at ¶ 11.

    c.   ODNI provided its final response to this request on December 14, 2012. *Id.* at ¶ 15.

    d.   ODNI's response provided three documents with redactions taken pursuant to FOIA

        Exemptions 1, 3, 5, and 7(E). *Id.*

   e.  ODNI provided a supplemental final response to this request on May 8, 2013, releasing additional information in two documents. *Id.* at ¶ 16.

2.  On June 15, 2012, Plaintiff submitted another FOIA request to ODNI.  *Id.* at ¶ 17.

   a.  This request sought the following:

     i.  The guidelines and mechanisms for the correction or documentation of "inaccuracy or unreliability of [ ] information, and supplement incomplete information to the extent additional information becomes available" Complaint, dkt. no. 1, at ¶ 24;

     ii.  Training materials used to "ensure that [ ] personnel use the datasets only for authorized NCTC purposes and understand the baseline and enhanced safeguards, dissemination restrictions, and other privacy and civil liberties protections they must apply to each such dataset" *id.*;

     iii.  Any information or documentation related to abuse, misuse, or unauthorized access of datasets acquired by NCTC (as indicated by the monitoring, recording, and auditing described in Section (C)(3)(d)(3)), *id.*;

     iv.  Written determinations by the Director of NCTC or designee regarding "whether enhanced safeguards, procedures, and oversight mechanisms are needed." *Id.*

   b.  ODNI numbered this request as DF-2012-00090. Ewing Decl. at ¶ 18.

   c.  On February 12, 2013, ODNI released four responsive documents with redactions taken pursuant to Exemptions 1, 2, 3, and 6. *Id.* at ¶ 19.

   d.  On March 11, 2013, ODNI released one document with redactions taken pursuant to Exemptions 1, 3, and 6. *Id.* at ¶ 20.

    e.  On March 11, 2013, ODNI also withheld 21 documents in their entirety pursuant to

          Exemptions 1, 2, 3, 5, and 6. *Id.*

    f.  On May 8, 2013, ODNI issued a supplemental final response, releasing additional

          information in one document. *Id.* at ¶ 21.

3.    On June 14, 2012, Plaintiff submitted another FOIA request to ODNI. Ewing Decl. at ¶

    23.

    a.  This request sought:

       i.  "Terms and Conditions and related documents, as described in Section (B)(2)(a)

    of the NCTC Guidelines"; Compl. at ¶ 25; and

       ii.  "All documents related to disputes between department and agency heads and

    DNI, as described under Section (B)(2)(d) of the NCTC Guidelines." *Id.*

    b.  ODNI numbered this request as DF-2012-00091.  Ewing Decl. at ¶ 23.

    c.  On July 19, 2012, Plaintiff appealed ODNI's failure to respond to this request within

    20 days.  *Id.* at ¶ 24.

    d.  On February 12, 2013, ODNI provided its final response to this request, stating that it

    was unable to locate any responsive documents. *Id.* at ¶ 26.

4.    On June 15, 2012, Plaintiff submitted another FOIA request to ODNI.  Ewing Decl. at ¶

    27.

    a.  This request sought "[a]ny guidelines or legal memoranda discussing NCTC's

    understanding and interpretation of the following standards used in the NCTC Guidelines

    discussed above: "reasonably believed to constitute terrorism information," "reasonably

    believed to contain terrorism information," and "likely to contain significant terrorism

    information." Compl. at ¶ 26.

3

b. ODNI numbered this request as DF-2012-00092.  Ewing Decl. at ¶ 28.

c. On February 12, 2013, ODNI provided its final response to this request, stating that it was unable to locate any responsive documents.  *Id.* at ¶ 29.

5. On October 12, 2012, counsel for the parties agreed to limit the scope of the four FOIA requests at issue in this litigation as follows:

a. "To include only records related to the revised NCTC guidelines of March, 2012."

b. For all requests, except the third subpart of request DF-2012-00090, "to documents that are final and not predecisional or deliberative in nature."

6. ODNI searched for responsive documents in the following offices: NCTC Missions Systems, NCTC Information Sharing Program and Policy Office, NCTC Civil Liberties and Privacy Office, NCTC Executive Secretariat, NCTC Legal, ODNI Executive Secretariat, the ODNI Civil Liberties and Privacy Office, and the ODNI Office of the General Counsel. Ewing Decl. at ¶ 32.

a. Personnel in these offices were asked to search electronic and hard copy files for responsive records between the dates of March 22, 2012 and October 26, 2012. Ewing Decl. at ¶ 33.

Dated: May 10, 2013                              Respectfully submitted,

                                                  STUART DELERY
                                                  Acting Assistant Attorney General

                                                  RONALD C. MACHEN JR.
                                                  United States Attorney
                                                  District of Columbia

                                                  ELIZABETH J. SHAPIRO
                                                  Deputy Branch Director,

4

Federal Programs Branch

_/s/ Eric J. Soskin_____
ERIC J. SOSKIN  (PA Bar No. 200663)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 353-0533
Fax: (202) 305-8517
Email: eric.soskin@usdoj.gov

Attorneys for Defendant