# EXHIBIT J

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
WASHINGTON, DC 20511

MAR 1 1 2013

Ms. Ginger McCall
Electronic Privacy Information Center
1718 Connecticut Avenue, NW
Suite 200
Washington, D.C. 20009

Reference: DF-2012-00090; EPIC v. ODNI, Case # 1:12-cv-01282-JEB

Dear Ms. McCall:

This is our final response to your 15 June 2012 letter to the Office of the Director of National Intelligence ("ODNI"), wherein you requested, under the Freedom of Information Act ("FOIA"):

1. **The guidelines and mechanisms for the correction or documentation of "inaccuracy or unreliability of [ ] information, and supplement incomplete information to the extent additional information becomes available;"**

2. **Training materials used to "ensure that [ ] personnel use the datasets only for authorized NCTC purposes and understand the baseline and enhanced safeguards, dissemination restrictions, and other privacy and civil liberties protections they must apply to each such dataset;"**

3. **Any information or documentation related to abuse, misuse, or unauthorized access of datasets acquired by NCTC (as indicated by the monitoring, recording and auditing described in Section (C)(3)(d)(3)).**

4. **Written determinations by the Director of NCTC or designee regarding "whether enhanced safeguards, procedures, and oversight mechanisms are needed."**

As subsequently negotiated with the Department of Justice, you revised your request and limited it to only records related to the revised National Counterterrorism Center ("NCTC") Attorney General ("AG") Guidelines of March 2012, and to documents that are final and not pre-decisional or deliberative in nature.

Your request was processed in accordance with the FOIA, 5 U.S.C. § 552, as amended. With respect to items 1, 2, and 4, we provided our response to you on 12 February 2013.

With respect to item 3, we conducted a search for records using the date the revised Guidelines went into effect (22 March 2012) through the date my office tasked ODNI components to conduct their search (26 October 2012) and located 22 documents, one of which can be released in segregable form with deletions made pursuant to FOIA Exemptions 1, 3, and 6; 5 U.S.C. § 552(b)(1), (b)(3), and (b)(6). That document, as redacted, is enclosed. The remaining 21 documents must be denied in full based on FOIA Exemptions 1, 2, 3, 5, and/or 6; 5

U.S.C. § 552(b)(1), (b)(2), (b)(3), (b)(5) and (b)(6). Please be advised that all of these documents are not technically responsive to your request because they involve potential compliance incidents other than those related to the specific provision of the 2012 revised Guidelines (i.e., "Section [III.](C)(3)(d)(3)") cited in your FOIA request. However, because they fall within the time period of our search and relate to compliance matters generally, we have processed them as a matter of agency discretion.

Exemption 1 protects information which is currently and properly classified in accordance with Executive Order 13526. Exemption 2 protects records that relate solely to internal personnel rules and practices of an agency. Exemption 3 protects information that is specifically covered by statute. In this case, the applicable statutes are the National Security Act of 1947, as amended, 50 U.S.C. § 403-1, which protects information pertaining to intelligence sources and methods, the Central Intelligence Agency Act of 1949, 50 U.S.C. § 403g, as amended, which protects, among other things, the names and other identifying information of personnel, and the Bank Secrecy Act, 31 U.S.C. § 5319, which exempts certain records collected by the U.S. Department of Treasury. Exemption 5 protects inter-agency or intra-agency communications protected by certain privileges, including the deliberative process privilege. Exemption 6 protects information the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

The ODNI regulation governing administrative appeals is set forth in 32 CFR § 1700.13. This regulation states that no appeal shall be accepted if the information in question is the subject of pending litigation in federal courts.

Sincerely,

John F. Hackett
Chief, Information and Data Management Group

Enclosure

**EXHIBIT K**

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
WASHINGTON, DC 20511

MAY 0 8 2013

Ms. Ginger McCall
Electronic Privacy Information Center
1718 Connecticut Avenue, NW
Suite 200
Washington, D.C. 20009

Reference: DF-2012-00090; EPIC v. ODNI, Case # 1:12-cv-01282-JEB

Dear Ms. McCall:

This serves as a supplemental response to item 2 of your 15 June 2012 letter to the Office of the Director of National Intelligence (ODNI), wherein you requested, under the Freedom of Information Act (FOIA):

> **Training materials used to "ensure that [ ] personnel use the datasets only for authorized NCTC purposes and understand the baseline and enhanced safeguards, dissemination restrictions, and other privacy and civil liberties protections they must apply to each such dataset;"**

As subsequently negotiated with the Department of Justice, you revised your request and limited it to only records related to the revised National Counterterrorism Center (NCTC) Attorney General Guidelines of March 2012, and to documents that are final and not pre-decisional or deliberative in nature.

Your request was processed in accordance with the FOIA, 5 U.S.C. § 552, as amended. ODNI has reviewed the four previously released documents responsive to item 2 and have determined that additional information in document number C05956002 titled "Data Access and Use" containing 66 pages (enclosed) can be released in segregable form with deletions made pursuant to FOIA Exemptions (b)(1), (b)(2), (b)(3), and (b)(6).

Exemption (b)(1) protects information which is currently and properly classified in accordance with Executive Order 13526. Exemption (b)(2) protects records that relate solely to internal personnel rules and practices of an agency. Exemption (b)(3) protects information that is specifically covered by statute. In this case, the applicable statutes are the National Security Act, as amended, which protects information pertaining to intelligence sources and methods; and the Central Intelligence Agency Act of 1949 U.S.C. § 403g, as amended, which protects, among other things, the names and other identifying information of ODNI personnel. Exemption (b)(6) protects information the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

The ODNI regulation governing administrative appeals is set forth in 32 C.F.R. Section 1700.13. This regulation states that no appeal shall be accepted if the information in question is the subject of pending litigation in federal courts.

If you have any questions, please call the Requester Service Center at (703) 874-8500.

Sincerely,

Jacqueline Winns
Acting Chief, Information and Data Management Group

Enclosures

# EXHIBIT L

# epic.org

*DF-2012-00091*
*EARLY APPEAL*

June 14, 2012

VIA FACSIMILE: 703-874-8910

FOIA Officer
Office of the Director of National Intelligence
Washington, DC 20511

JUN 18 2012

1718 Connecticut Ave NW
Suite 200
Washington DC 20009
USA
+1 202 483 1140 [tel]
+1 202 483 1248 [fax]
www.epic.org

Re: Freedom of Information Act Request

Dear FOIA Officer,

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted on behalf of the Electronic Privacy Information Center ("EPIC") to the Office of the Director of National Intelligence ("ODNI").

EPIC seeks documents referenced in the Guidelines for Access, Retention, Use, and Dissemination by the National Counterterrorism Center and Other Agencies of Information in Datasets Containing Non-Terrorism Information, ("NCTC Guidelines") that describe the terms and conditions of the National Counterterrorism Center's ("NCTC") acquisition of and access to databases and disputes related to this sharing of information.

Background

On March 22, 2012, the New York Times reported that Attorney General Eric Holder had signed new guidelines for the NCTC which would relax restrictions on how counterterrorism analysts may retrieve, store, and search information about Americans.[1] The Washington Post corroborated this.[2]

The NCTC Guidelines allow the NCTC to access and make copies of entire datasets then data mine those copies using complex algorithms.[3]

---

[1] Charlie Savage, *U.S. Relaxes Limits on Use of Data in Terror Analysis*, New York Times, Mar. 22, 2012, http://www.nytimes.com/2012/03/23/us/politics/us-moves-to-relax-some-restrictions-for-counterterrorism-analysis.html?_r=1
[2] Sari Horwitz and Ellen Nakashima, *New Counterterrorism Guidelines Permit Data on U.S. Citizens to be Held Longer*, Mar. 22, 2012, http://www.washingtonpost.com/world/national-security/new-counterterrorism-guidelines-would-permit-data-on-us-citizens-to-be-held-longer/2012/03/21/gIQAFLm7TS_story.html?wprss=
[3] Charlie Savage, *U.S. Relaxes Limits on Use of Data in Terror Analysis*, New York Times, Mar. 22, 2012, http://www.nytimes.com/2012/03/23/us/politics/us-moves-to-relax-some-restrictions-for-counterterrorism-analysis.html?_r=1

Section (B)(2)(a) of the NCTC Guidelines details the process by which the NCTC can obtain and copy datasets:

> For access to or acquisition of specific datasets, the DNI, or the DNI's designee, shall collaborate with the data provider to identify any legal constraints, operational considerations, privacy or civil rights or civil liberties concerns or protections, or other issues, and to develop appropriate Terms and Conditions that will govern NCTC's access to or acquisition of datasets under these Guidelines.[4]

Section (B)(2)(d) of the NCTC Guidelines also establishes the procedures by which the heads of departments or agencies can raise objections to the NCTC's requests for data:

> If the head of the department or agency providing the information or the DNI objects to providing data to NCTC, objects to the "track" under which NCTC intends to acquire the data, or objects to the Terms and Conditions developed after consultation…, the head of the department or agency or the DNI may raise any concerns, in writing, with the other party…Failing resolution, either party may refer a dispute concerning constitutional or other legal matters to the Attorney General and may seek the resolution of any other disputes through the National Security Council. In connection with any such disputes, the Attorney General or National Security Council may seek the advice of the Privacy and Civil Liberties Oversight Board.[5]

EPIC now requests all Terms and Conditions and related documents, as described in Section (B)(2)(a) of the NCTC Guidelines, as well as any documents related to disputes, as described under Section (B)(2)(d) of the NCTC Guidelines. Because the ODNI is the parent agency if the NCTC, we direct this request to you.[6]

Documents Requested

EPIC requests the following documents:

1. Terms and Conditions and related documents, as described in Section (B)(2)(a) of the NCTC Guidelines;

2. All documents related to disputes between department and agency heads and DNI, as described under Section (B)(2)(d) of the NCTC Guidelines.

---

[4] United States Department of Justice, Office of the Attorney General, Guidelines for Access, Retention, Use, and Dissemination by the National Counterterrorism Center and Other Agencies of Information in Datasets Containing Non-Terrorism Information, p. 5 (March 22, 2012), available at: https://www.documentcloud.org/documents/327629-nctc-guidelines.html
[5] *Id.* at 6.
[6] Office of the Director of National Intelligence, homepage, http://www.dni.gov/index.html

Request for Expedited Processing

This request warrants expedited processing because it is made by "a person primarily engaged in disseminating information ..." and it pertains to a matter about which there is an "urgency to inform the public about an actual or alleged federal government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II) (2008); *Al-Fayed v. CIA*, 254 F.3d 300, 306 (D.C. Cir. 2001).

EPIC is "primarily engaged in disseminating information." *American Civil Liberties Union v. Department of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004).

There is a particular urgency for the public to obtain information about the NCTC's new Guidelines. Many national news media outlets[7] covered this development because the sharing of these datasets has profound privacy implications for U.S. persons and marks a strong departure from earlier guidelines.

Request for "News Media" Fee Status

EPIC is a "representative of the news media" for fee waiver purposes.[8] Based on our status as a "news media" requester, we are entitled to receive the requested record with only duplication fees assessed. Further, because disclosure of this information will "contribute significantly to public understanding of the operations or activities of the government," any duplication fees should be waived.

Thank you for your consideration of this request. As provided in 6 C.F.R. § 5.5(d)(4), I will anticipate your determination on our request within ten (10) calendar days. For questions regarding this request I can be contacted at 202-483-1140 ext. 102 or FOIA@epic.org.

Respectfully Submitted,

Ginger P. McCall
Director, EPIC Open Government Project

---

[7] Supra, n. 1, 2
[8] *EPIC v. Department of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003).