## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) | |
| Plaintiff, | ) ) | 1:12-cv-1282 (JEB) |
| vs. | ) ) | |
| OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE | ) ) ) | |
| Defendant. | ) ) ) | |

_____)

## DEFENDANT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant Office of the Director of National Intelligence ("ODNI") hereby provides a Reply in support of its Motion for Summary Judgment, dkt. no. 11-1 ("MSJ"), and its Opposition to Plaintiff Electronic Privacy Information Center's ("EPIC's") Cross-Motion for Summary Judgment, dkt. no. 12.

## INTRODUCTION

This action is a Freedom of Information Act ("FOIA") case stemming from four FOIA requests made by Plaintiff for information related to the National Counterterrorism Center's ("NCTC's") revised privacy guidelines. This action is appropriate for summary judgment because Plaintiff has not identified any issues of material fact in its Opposition and Cross-Motion. *See* dkt. no. 12; Local R. Civ. P. 7(h). Plaintiff has conceded all of the withholdings in the documents released in part by ODNI. Plaintiff has also conceded the adequacy of ODNI's search and all withholdings in the documents withheld in full pursuant to Exemption 1, Exemption 2, and Exemption 6 of FOIA. In addition, Plaintiff has conceded that the names of specific datasets and the names of data provider agencies are appropriately withheld pursuant to Exemption 3 of FOIA. Its brief challenges only: 1) ODNI's determination that there exists no

segregable information that can be released from 21 documents withheld in full; and 2) the application of Exemption 3, Exemption 5, and Exemption 7(E) to withhold information apart from the names of datasets and data provider agencies in these documents.

Because ODNI's withholdings under Exemptions 3, 5, and 7(E) were proper under FOIA, the Court should grant summary judgment to Defendant.[1]

## ARGUMENT

I.     **EPIC HAS CONCEDED THE ADEQUACY OF ODNI'S SEARCH, THE PROPRIETY OF ALL PARTIAL WITHHOLDINGS, ALL OF ODNI'S WITHHOLDINGS PURSUANT TO FOIA EXEMPTIONS 1, 2, AND 6, AND ALL WITHHOLDINGS OF DATABASE NAMES AND DATA PROVIDER AGENCIES.**

At the outset, ODNI should be granted summary judgment on all issues except for those expressly contested by Plaintiff in its opposition brief. *See Franklin v. Potter*, 600 F. Supp. 2d 38, 60 (D.D.C. 2009) (treating defendant's argument in summary judgment motion as conceded where plaintiff failed to address it in plaintiff's response); *Hopkins v. Women's Div., General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."); *Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.D.C. 2002) ("[I]f the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.").

In its opening brief, ODNI moved for summary judgment on the adequacy of its search for responsive documents as well as on its withholdings. *See* MSJ at 6-8 (describing documents released in part and withheld in part); *id.* at 14-15 (demonstrating adequacy of search).

---

[1] As set forth in Defendant's concurrent Motion to Strike and Stay Briefing, Plaintiff's request that the Court rule that it is eligible for, and entitled to, attorney's fees and costs is premature and does not comply with the Federal and Local Rules. For this reason, Defendant does not address these arguments here. Should the Court disagree and deny Defendant's Motion to Strike and Stay Briefing, Defendant respectfully requests that the Court enter a briefing schedule providing Defendant with thirty days to respond to Plaintiff's arguments regarding attorney's fees.

Plaintiff's opposition brief does not contest any aspect of the search and explicitly limits its challenge to the documents ODNI withheld in full.  *See* Plaintiff's Memorandum of Points and Authorities ("Pl. Mem."), dkt. No. 12-2 at 6 ("As set forth below, EPIC challenges the propriety of the agency's withholding of 21 documents in their entirety.").  Plaintiff has thus conceded any arguments as to the adequacy of ODNI's search and to the redactions taken in any documents released in part and withheld in part.

As a result, ODNI is entitled to summary judgment as to the entirety of three of the four FOIA requests at issue in this litigation: those numbered as DF-2012-00059, DF-2012-00091 and DF-2012-00092.  *See* MSJ at 4-6, Part II.B. and Part II.D.  Further, ODNI is entitled to summary judgment as to three of the four subparts of the lone remaining FOIA request, DF-2012-00090. *See* MSJ at Part II.C.  The only remaining documents in dispute are the documents withheld in full, related to the third subpart of DF-2012-00090, which while "not technically responsive" to the FOIA request, were processed by ODNI "as a matter of agency discretion."  MSJ at 5, 8-9.

ODNI's opening brief also sets forth explanations of its withholdings pursuant to Exemption 1, Exemption 2, and Exemption 6 of the FOIA.  *See* MSJ at 16-21 (Exemption 1 and Exemption 2), 28-30 (Exemption 6).  By not presenting any arguments in its brief concerning those exemptions, Plaintiff has conceded any challenge to those withholdings in the twenty-one documents withheld-in-full.  As explained in the Declaration of ODNI Chief Management Officer Mark W. Ewing, these conceded exemptions include material in three "Deletion Issue Trackers," all four "Deletion Issue Reports," and all six "Deletion Issue Tracker Emails." *See* dkt. no. 11-2 ("Ewing Decl.") at ¶¶ 37(c)(ii), 37(c)(iii), 37(c)(iv).

Although Plaintiff superficially contests all of ODNI's withholdings pursuant to Exemption 3, a closer examination of Plaintiff's opposition brief reveals that it has also conceded the application of Exemption 3 to two significant categories of information contained in the challenged documents: the names of specific data sets and the names of data provider agencies. In its opening brief, ODNI argued that it properly withheld this information, along with other information in the "Deletion Issue" documents, as information that "would reveal sensitive

and/or classified sources and methods information" protected by Section 102A of the National Security Act of 1947 and Exemption 3. *See* MSJ at 21-22. As Mr. Ewing explains further in his declaration, release of information about "what datasets are routinely reviewed by NCTC . . . might assist [terrorists] in identifying gaps and seams" in U.S. intelligence and counterterrorism programs. In its opposition brief, Plaintiff acknowledges that "the Ewing Declaration specifically argues [these] are intelligence sources and methods," and provides no argument that they are not. Pl. Mem. at 11. For this reason, ODNI is entitled to summary judgment as to its withholdings of data set names and data provider agencies pursuant to Exemption 3.

## II.   ODNI'S WITHHOLDINGS IN FULL PURSUANT TO EXEMPTIONS 3, 5, AND 7(E) WERE PROPER.

ODNI withheld the entirety of all the twenty-one documents at issue pursuant to both Exemption 3 and Exemption 5, and portions of all twenty-one documents at issue pursuant to Exemptions 1, 2, 3, 6, and 7(E). Only one FOIA exemption is necessary to justify a withholding under FOIA; if a court finds that ODNI's withholding are proper under only one exemption, it need not reach the issue of whether assertion of the other exemptions was proper. *Coleman v. Lappin*, 607 F. Supp. 2d 15, 23 (D.D.C. 2009) (*citing Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1992)).

Importantly, where virtually all materials in a document are properly withheld pursuant to FOIA exemptions, the agency has no obligation to segregate non-exempt material that is so "inextricably intertwined" with the exempt material that it would result in an "edited document with little informational value." *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981), *abrogated on other grounds* by *Church of Scientology of Calif. v. IRS*, 792 F.2d 153 (D.C. Cir. 1986); *see also Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220–21 (D.D.C. 2005) (same). Contrary to Plaintiff's argument, it is not correct that ODNI has "simply . . . recite[d] the language of the FOIA to justify its withholding." Pl. Mem. at 8. Rather, ODNI's opening brief and supporting declaration both explained that ODNI performed "a line-by-line review" for

material that could be segregated and provided reasons behind the conclusion that no material

could be segregated in these documents.  *See* MSJ at 33-34.  For this reason, and because, as

explained below, ODNI's invocations of Exemptions 3, 5, and 7(E) are justified, ODNI has

properly withheld the twenty-one documents in their entirety.

### A.    ODNI PROPERLY INVOKED EXEMPTION 3

Evaluating whether documents are properly withheld under Exemption 3 presents

considerations "distinct and apart from the other eight exemptions." *Fitzgibbon v. Central*

*Intelligence Agency ("CIA")*, 911 F.2d 755, 761 (D.C. Cir. 1990) (*quoting Ass'n of Retired R.R.*

*Workers v. U.S. R.R. Retirement Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987)).  When Congress has

enacted statutes that particularly identify certain categories of information that are exempt from

public disclosure notwithstanding the requirements of FOIA, Congress makes "manifest" its

intent to require the withholding of documents falling within the terms of those statutes.

*Fitzgibbon*, 911 F.2d at 761; *see also id.* at 764 ("exemption statutes were congressionally

designed to shield processes at the very core of the intelligence agencies – intelligence-collection

and intelligence-source evaluation").

At the outset, Plaintiff has conceded that Exemption 3 is properly asserted by the DNI to

protect "intelligence sources and methods from unauthorized disclosure."  Pl. Mem. at 9; 5

U.S.C. § 552(b)(3) as amended; 50 U.S.C. § 3024 (i)(1) (Section 102A(i)(1) of the National

Security Act of 1947).[2]  Sources and methods constitute "the heart of all intelligence operations."

*CIA v. Sims*, 471 U.S. 159, 167 (1985).  For this reason, "it is the responsibility of the

[intelligence community], not that of the judiciary to weigh the variety of complex and subtle

factors in determining whether disclosure of information may lead to an unacceptable risk of

compromising the . . . intelligence-gathering process." *Id.* at 180.  Thus, in the words of this

Court, the "sources and methods" exemption provided to the U.S. Intelligence Community is a

"near blanket FOIA exemption," and is "only a short step [from] exempting all [intelligence

---

[2] The citation to the National Security Act of 1947, as amended, was recently changed by the Office of the Law
Revision Counsel and went into effect on May 20, 2013.  At the time of Defendant's opening brief, this provision
was correctly cited as 50 U.S.C. § 403-1.

agency] records from FOIA." *Whalen v. U.S. Marine Corps*, 407 F. Supp. 2d 54, 59 n.5 (D.D.C. 2005) (Leon, J.) (internal quotations omitted).  As the Supreme Court in *Sims* further explained, the DNI's authority to protect sources and methods information includes the "power to withhold superficially innocuous information on the ground that it might enable an observer to discover the identity of an intelligence source," and, "[i]n this context . . . bits and pieces of data may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself." *Id.* at 178 (internal quotations omitted).

As noted above, Plaintiff has also conceded that the names of specific data sets and data provider agencies are sources and methods protected by the National Security Act.  *See infra* Part I; Pl. Mem. at 11.  Nevertheless, Plaintiff contends that the "date the issue was identified, the date the records were due to be deleted, the number of records deleted, the exposure of access, and the brief description of the issue" are not information properly protected as intelligence sources and methods.  *Id.*  Plaintiff's view ignores the broad protections conferred by Exemption 3.  As explained in ODNI's prior brief, in analyzing the propriety of a withholding taken pursuant to Exemption 3, the Court need not examine "the detailed factual contents of specific documents" in which withholdings have been taken. *Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007).  Rather, "'the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.' It is particularly important to protect intelligence sources and methods from public disclosure." *Id*. (*quoting Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C.Cir.1987)).  In this regard, segregability analysis for records properly withheld in part under Exemption 3 differs from that under other exemptions.  *See Fitzgibbon*, 911 F.2d at 761.  Plaintiff's concession that the data set names and data provider agencies contained in these twenty-one documents are properly withheld pursuant to Exemption 3 is therefore fatal to its claim that ODNI has failed to release segregable information from the same documents.

In addition, Plaintiff's view of the meaning of "intelligence methods" is too narrow. "Methods" encompass the universe of means by which an intelligence agency accomplishes its

objectives, including the basic analytic practices, methodological tools, and special internal

practices and procedures used to accomplish the government's intelligence mission, as well as its

electronic devices, human sources, and other sophisticated techniques.  *See James Madison*

*Project v. CIA*, 605 F. Supp. 2d 99, 114 (D.D.C. 2009) (confirming applicability of Exemption 3

to "the CIA's special practices and procedures" and "internal information concerning the CIA's

organizational structure.").[3]

 The explanation of Mr. Ewing, an intelligence official with long experience within and

beyond ODNI and an Original Classification Authority at the TOP SECRET level, amply

demonstrates that the entirety of these documents falls within the protection of the National

Security Act.  Mr. Ewing's declaration identifies material in the withheld documents, including

the names of data sets and agencies, as information that would "assist adversaries in piecing

together bits of information that would provide insights into the particular sources and methods

relied upon by NCTC analysts to produce terrorist intelligence reports . . . [and] would seriously

degrade the overall effectiveness of U.S. counterterrorism activities." Ewing Decl. at ¶ 54.  The

information that could provide such insights include the dates when records were added to or

deleted from a data set, which provides information about the period of time when gathered

information is potentially available to ODNI for analysis alone and in conjunction with other

data.  "The number of records deleted" could similarly be used as to identify the aggregate scope

of  intelligence collection and analysis or to deduce the identity of one of the data sets or data

provider agencies on which ODNI relies.  For example, knowledge of whether a particular data

set might contain fifty records, fifty thousand records, or fifty million records could provide a

critical insight into the breadth of U.S. intelligence capabilities.  *See Aftergood v. CIA*, 355 F.

Supp. 2d 557, 562 (D.D.C. 2005) (affirming Exemption 3 withholding of aggregate intelligence

---

[3] An erroneously-narrow view is also responsible for Plaintiff's mistaken contention that "[i]t is not clear from [] ODNI's brief or the Ewing Declaration how documents on failures to timely delete information from certain databases constitutes bank information of the type exempted under the Bank Secrecy Act." Pl. Mem. at 12-13.  As ODNI explained previously, 31 U.S.C. § 5319 protects both "a report" and "records of reports" from disclosure. MSJ at 23-24.  Thus, the withheld material may describe records of those reports, not merely the reports themselves, and Mr. Ewing's statement provides adequate support for the conclusion that this material is properly withheld.  *See* Ewing Decl. at ¶ 58.

budget information).  For this reason, Mr. Ewing concluded – correctly – that the information in the challenged documents constitutes sources and methods information protected by Exemption 3.  Because Courts in this Circuit must give "special deference [] to agency affidavits on national security matters" and "[i]t is particularly important to protect intelligence sources and methods from public disclosure," the declaration of Mr. Ewing warrants a grant of summary judgment as to Exemption 3.  *Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007).

## B.  ODNI PROPERLY INVOKED EXEMPTION 5.

ODNI properly invoked Exemption 5 to withhold information protected by the deliberative process privilege.  ODNI's opening brief documented that Exemption 5 extends to all privileges available to agencies in civil litigation, including the deliberative process privilege. *See* MSJ at 24.  This privilege protects "predecisional" and "deliberative" documents that "comprise[] part of a process by which government decisions and policies are formulated." *Loving v. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008) (*quoting Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).  Plaintiff does not dispute that the contested records are pre-decisional.  *See* Pl. Mem. at 12-17.  Rather, contrary to this Court's deliberative process doctrine, Plaintiff contends that documents containing factual material, including the twenty-one drafts at issue here, cannot be deliberative in nature.  *See* Pl. Mem. at 14-16.  This stance misconstrues the purpose and scope of Exemption 5, which protects all information, including factual material, that would expose an agency's deliberative process.

Exemption 5 is "intended to protect not simply deliberative material, but also the deliberative process of agencies." *Montrose Chem. Corp. of California v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974).  Thus, even factual material is exempt under Exemption 5 if disclosure "would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (*citing Dudman Commc'n. Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).

Plaintiff mischaracterizes the scope and purpose of Exemption 5 by asserting that exclusively-factual material cannot be withheld pursuant to this exemption. *See* Pl. Mem. at 14-15. In fact, the D.C. Circuit has rejected this mechanical application of the deliberative process privilege. *See Dudman*, 815 F.2d at 1567-69 (although "the first courts that considered the deliberative process aspect of Exemption 5 drew a distinction between 'factual' material and 'deliberative' material . . . courts soon came to realize [] that use of the factual matter/deliberative matter distinction produced incorrect outcomes in a small number of cases."); *Goodrich Corp. v. EPA*, 593 F. Supp. 2d 184, 189 (D.D.C. 2009) ("Indeed, the D.C. Circuit has cautioned against overuse of the factual/deliberative distinction."). Because disclosure of materials "labeled 'factual' will occasionally reveal much about that [deliberative] process," courts shifted focus from the nature of the material to the effect of its disclosure. *Goodrich*, 593 F. Supp. 2d at 189 (internal citations omitted).

Whether the disclosure reveals an agency's decision-making process is therefore "the key question." *Dudman*, 815 F.2d at 1568. With the proper focus on the deliberative process, this Court has upheld the nondisclosure of documents containing factual information. *See Charles v. Office of the Armed Forces Med. Exam'r*, No. 09-199 (RWR), 2013 WL 1224890 (D.D.C. Mar. 27, 2013) (biological autopsy data); *McKinley v. FDIC*, 744 F. Supp. 2d 128 (D.D.C. 2010); (financial statistics and risk exposure data); *Goodrich Corp.*, 593 F. Supp. 2d 184 (scientific, groundwater flow data); *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114 (D.D.C. 1984) (scientific test results). Regardless of the factual nature of the documents, an agency's deliberative process must be protected "to prevent injury to the quality of agency decisions." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 141 (1975).

"As a general matter, drafts of documents are exempt from disclosure under [this] privilege." *Goodrich*, 593 F. Supp. 2d at 189 (internal quotations and citations omitted). Drafts are deliberative in that they represent "only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors." *In re Apollo Grp Inc. Sec. Litigation*, 251 F.R.D. 12, 31 (D.D.C. 2008) (internal quotations omitted)

(describing deliberative process outside the FOIA context).  These early versions of documents can expose agency process through comparison to the final product.  Exemption 5 thus protects documents that uncover an agency's process by demonstrating its "selection and calibration of data." *Goodrich*, 593 F. Supp. 2d at 189 (*citing Montrose*, 491 F.2d at 72).  Even "omission reveals an agency deliberative process: for some reason, the agency decided not to rely on that fact or argument after having been invited to do so . . . ." *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1049 (D.C. Cir. 1982) (quoting *Lead Indus. Ass'n v. OSHA*, 610 F.2d 70, 85-86 (2d Cir. 1979).  Thus, drafts often "reflect[] the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

The twenty-one pre-decisional draft documents withheld by ODNI described possible, but not certain, compliance issues. Ewing Decl. at ¶ 67.  All were subject to future "edit[ing] to elaborate on additional relevant details, [and] refin[ing] to clarify facts and remove potential ambiguities." *Id.*  These documents could also be edited to correct information initially included but ultimately determined erroneous through ODNI's review process.  *Id.*  Mr. Ewing avers that "these documents were (and continue to be) subject to change until a full review is concluded and a final compliance review is completed and issued by the NCTC compliance team." *Id.* Moreover, these documents are part of the agency's process of formulating policies: to wit, "potential measures that can be implemented by NCTC to minimize the risk of recurrence in the future." *Id.*  Thus, comparing these with later drafts could reveal ODNI's "selection and calibration of data," *see Goodrich*, 593 F. Supp. 2d at 189, including omissions of data that would show "the agency decided not to rely on [a] fact," as well as reveal significant aspects of ODNI's decision-making tendencies. *Russell* 682 F.2d at 1049.  "[S]uch disclosure of the internal workings of the agency is exactly what the law forbids." *Id.*  Mr. Ewing articulated precisely this concern, explaining that the agency's deliberations require both rigorous "assessment" and possible "correct[ion]" of the factual details before the documents can be finalized, lest premature release "cause public confusion by revealing premature opinions, recommendations, and conclusions that may conflict with the final compliance review report."

Ewing Decl. at ¶ 67.  Mr. Ewing is best situated "to know what confidentiality is needed to prevent injury to the quality of agency decisions," and is therefore to be accorded "considerable" deference in his judgment as to what constitutes . . . part of the agency give-and-take [] of the deliberative process . . . ."  *Chem. Mfrs. Ass'n*, 600 F. Supp. at 118 (internal quotations and citations omitted).

Although Plaintiff collects a scattershot array of precedents that superficially support its position, none actually countenance Plaintiff's argument that factual information, regardless of whether it appears in a draft document used to formulate agency policy, must be released. Indeed, if any common thread knits together the disparate cases cited by Plaintiff, it is that courts will defer to an agency's judgment that its deliberations will be harmed unless – in contrast to the circumstances here – the agency cannot demonstrate the documents' role in formulating policy. Thus, in this Court's decision in *CREW v. DHS*, "no agency policy [was] being debated or discussed."  648 F. Supp. 2d 152, 159 (D.D.C. 2009).  Similarly, in *Coastal States Gas v. Dep't of Energy*, the documents at issue constituted an "informal, functioning body of 'secret law,'" relative to which no "'decision' [was] being made or 'policy' being considered."  617 F.2d 854, 868 (D.C. Cir. 1980).  The same is true in *Antonelli v. BOP*, where this Court rejected withholdings only where there was "no indication" that documents were "pre-decisional and deliberative."  623 F. Supp. 2d 55, 58-60 (D.D.C. 2009); *see also Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1437 (D.C. Cir. 1992) (a "salient characteristic of the information at issue is its lack of association with a significant policy decision"); *Playboy Enterprises v. DOJ*, 677 F.2d 931, 936 (D.C. Cir. 1982) (factual information provided to Attorney General not related to "reaching a proper decision," but only to ultimately "make available to Congress.").[4]  Indeed, in *Quarles v. Dep't of Navy*, the Court affirmed the withholding of "cost estimates" as the type of

---

[4] Because several of these cases review withholdings on numerous documents and categories of documents and Plaintiff's brief often lacks pinpoint citations, Defendant has used its best judgment to determine the relevant portions thereof.

factual information for which premature release "could chill discussion." 893 F.2d 390, 393

(D.C. Cir. 1990).[5]

     As Mr. Ewing explained, the draft documents withheld by ODNI were created to help

develop policies, including "potential measures that can be implemented by NCTC to minimize

the risk of recurrence in the future."  Ewing Decl. at ¶ 67.  Plaintiff has cited no apposite case in

which a court ordered the release of draft documents which remained subject to change and

where those facts were being used to make a policy decision.  Nor has Plaintiff provided a reason

to believe that Mr. Ewing's assessment of the damage to the agency's deliberative process is

erroneous.  The Court should therefore affirm ODNI's withholdings of all twenty-one documents

as proper pursuant to Exemption 5.


### C.  ODNI PROPERLY INVOKED EXEMPTION 7(E).

     In its opening brief, ODNI succinctly applied the legal standards for Exemption 7 to

demonstrate that its withholdings were justified without belaboring those standards.  Defendant's

cross-motion muddles the argument by incorrectly describing those legal standards, so a

clarification of the law is appropriate.

### 1.  Legal Standard

     As this Court has explained, an agency may properly withhold records pursuant to

Exemption 7(E) when those records: (1) "qualify for protection under Exemption 7;" and (2)

"would disclose techniques and procedures for law enforcement investigations or prosecutions,

or would disclose guidelines for law enforcement investigations or prosecutions if such

disclosure could reasonably be expected to risk circumvention of the law."  *McCann v. United*

*States*, 828 F. Supp. 2d 317, 324 (D.D.C. 2012) (Boasberg, J.) (*quoting* 5 U.S.C. § 552(b)(7)(E)).

---

[5] The Supreme Court's decision in *Dep't of Interior v. Klamath Water Users*, repeatedly cited by Plaintiff, is even less relevant: the Court in *Klamath Water Users* never reached the substance of the government's privilege assertion, concluding only that the threshold requirement of an "inter-agency or intra-agency" communication had not been met. *See* 532 U.S. 1, 8 (2001).

The first part, frequently described as the "Exemption 7 threshold," is satisfied if the "information within the records meet the predicate requirement of being compiled for a law enforcement purpose." *Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002); *see Anderson v. Fed. Bureau of Prisons*, 806 F. Supp. 2d 121, 126 ("records and information withheld thereunder must be compiled 'for a law enforcement purpose.' This protection extends to both investigatory and non-investigatory records.") (internal citations omitted).  After the 1986 amendments to Exemption 7, it is clear that such an agency need not show that the information was compiled with relation to a specific investigation, so long as the information itself relates to a law enforcement purpose. *Tax Analysts*, 294 F.3d at 78–79; *see North v. Walsh*, 881 F.2d 1088, 1098 n. 14 (D.C. Cir. 1989) ("Congress . . . changed the threshold requirement for withholding information under exemption 7: the exemption formerly covered 'investigatory records compiled for law enforcement purposes'; it now applies more broadly to "records or information compiled for law enforcement purposes.").  Moreover, information originally compiled for law enforcement purposes does not lose its status as law enforcement information when "reproduced or summarized in a new document prepared for a non-law-enforcement purpose." *FBI v. Abramson*, 456 U.S. 615, 631–32 (1982).

Once the Exemption 7 threshold is satisfied, an agency's invocation of Exemption 7(E) must satisfy the standards of that subpart; namely, that release of information would: (1) "disclose techniques and procedures for law enforcement investigations or prosecutions;" or (2) "disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  As the Court of Appeals has explained, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (*quoting Mayer Brown, LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)); *see McCann*, 828 F. Supp. 2d at 324.  Thus, "[i]nformation that relates to law

enforcement techniques, policies, and procedures is properly withheld under this exemption," if it would "provide insight into [the agency's] investigatory or procedural techniques" that could help a terrorist or criminal evade the agency's activities. *Barnard v. DHS*, 598 F. Supp. 2d 1, 22-23 (D.D.C. 2009).

### 2. ODNI's withholdings meet the Exemption 7 threshold and satisfy the standards for properly invoking Exemption 7(E).

ODNI invoked Exemption 7(E) to protect the "names of sensitive and/or classified datasets and the names of data provider agencies" contained in the twenty-one challenged records.  Dkt. 11-1 at 30; Ewing Decl. at ¶ 76.  As explained in Defendant's opening brief and supported by the declaration of Mr. Ewing, this information was collected in direct fulfillment of a law enforcement purpose assigned to ODNI by statute, and therefore satisfies the Exemption 7 threshold.  Specifically, the dataset names and data provider names comprise information compiled by ODNI to operate "the Terrorist Identities Datamart Environment ("TIDE"), which is the U.S. Government's central repository of information on international terrorist identities," and from which data is exported "for use in the U.S. Government's consolidated watchlist . . . to support[] screening [] to detect and interdict known and suspected terrorists at home and abroad."  Ewing Decl. at ¶ 78.  This effort directly supports NCTC's statutory mission to "combin[e] terrorist travel intelligence operations and law enforcement planning and operations into a cohesive effort to intercept terrorists, find terrorist travel facilitators, and constrain terrorist mobility."  *Id.* (*quoting* 50 U.S.C. § 404o(f)(1)(F)).  There can be no doubt that the records in these data sets, and the associated information about their source data sets, is information gathered for a law enforcement purpose.  *See Gordon v. FBI*, 388 F. Supp. 2d 1028, 1045 (N.D. Cal. 2005) (information related to maintaining watchlists is compiled for a law-enforcement purpose); *Public Emps. for Envt. Responsibility v. United States Section Int'l Bound. And Water Comm'n*, 839 F. Supp. 2d 304, 325 (D.D.C. 2012) ("courts recognize that law enforcement within the meaning of the Exemption 7 threshold extends to matters of homeland security")

(citing *Ctr. For Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926 (D.C. Cir. 2003)); *see also Pratt v. Webster*, 673 F.2d 408, 421 (D.C. Cir. 1982) ("to pass the FOIA Exemption 7 threshold," agencies may act out of concern "that national security may be breached").[6]

Nor can there be any doubt that release of the dataset and data provider agency information "risk[s] circumvention of the law" and thus satisfies the subpart requirements for Exemption 7(E). 5 U.S.C. § 552(b)(7)(E). As Mr. Ewing explains, if "known or suspected terrorists gained insights into what datasets are routinely reviewed by NCTC . . . that knowledge will clearly assist them in efforts to develop tactics, techniques and procedures for evading detection at international ports of entry or when transferring funds into the United States from foreign banks and financial institutions." Ewing Decl. at ¶¶ 78, 80. Because Exemption 7(E) requires an agency only to "demonstrate logically how the release of the requested information might create a risk of circumvention of the law," ODNI has met that standard. *Blackwell*, 646 F.3d at 42. Here, knowledge of the sources of information used to maintain a watchlist is clearly and logically linked to the prospect that law enforcement measures to protect homeland security will be circumvented. *See McCann*, 828 F. Supp. 2d at 324 (Exemption 7(E) satisfied where "release of the document would disclose methods used in law enforcement and could reduce or nullify the effectiveness of the methods [because] it would alert entities as to how they can fashion their operations . . . ."); *Adionser v. Dep't of Justice*, 811 F. Supp. 2d 284, 300 (D.D.C.

---

[6] By misleadingly quoting a fragment of a sentence by Mr. Ewing ("NCTC is not a law enforcement agency," Ewing Decl. at ¶ 77), Plaintiff erroneously contends that ODNI lacks any law enforcement authority whatsoever and is thus not a "mixed function" agency. *See* Dkt. No. 12-2 at 18 ("ODNI's concession that the NCTC is 'not a law enforcement agency' should disqualify it from claiming Exemption 7 withholding" altogether). To make this implausible argument, Plaintiff meaninglessly plucks that fragment from its context and ignores: 1) the remainder of that very sentence; 2) the paragraph which that fragment introduces; and 3) the next paragraph, all of which explain NCTC's law enforcement and homeland security missions. *See* Ewing Decl. at ¶¶ 77-78 (explaining the NCTC's "perform[ance of] work related to law enforcement investigations or prosecutions," role in "integrating . . . intelligence, homeland security, and law enforcement activities," and operation of TIDE, which, as explained above, is a critical law enforcement and homeland security function used, inter alia, to support watchlists and other screening procedures). Read in context, Mr. Ewing's statement makes clear that NCTC is very much an agency with a mixture of law-enforcement and non-law enforcement functions. Because "FOIA makes no distinction between agencies whose principal function is criminal law enforcement and agencies with both enforcement and administrative functions," *Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002), NCTC's status as a mixed function agency does not invalidate its invocation of Exemption 7.

2011) (proper to apply Exemption 7(E) to protect "procedures that relate to the identification and contents of [] FBI databases").

### 3. Plaintiff's challenge to Exemption 7(E) misstates the governing law.

Plaintiff's argument challenging ODNI's assertion of Exemption 7(E) depends on a misunderstanding of this Circuit's precedent and the impact of the 1986 amendments to FOIA. Relying on the 1982 Court of Appeals decision in *Pratt*, Plaintiff argues that ODNI must demonstrate that the withheld records "pertain[] to a particular target, or at least a particular investigation." Pl. Mem. at 19-20 (*citing Pratt*, 673 F.2d at 423-431). As that Court subsequently explained in *Keys v. U.S. Dep't of Justice*, however, the requirement that a law enforcement purpose be linked to a particular investigation did not survive the 1986 amendments:

> Until recently, exemption 7 required a threshold showing that the documents in question were "investigatory records compiled for law enforcement purposes. . . ." See 5 U.S.C. § 552 (b) (7) (1982) . . . . [T]he Freedom of Information Reform Act of 1986 broadened the scope of the exemption 7 threshold by replacing "investigatory records" with the more general term "documents or information." Pub. L. No. 99-570, § 1802(a) (Oct. 27, 1986) (to be codified at 5 U.S.C. § 552 (b) (7))[.]
> …
> the nexus between the agency's activity (under the old scheme, an "investigation") and its law enforcement duties must be based on information sufficient to support at least a colorable claim of its rationality."

830 F. 2d 337, 340 (D.C. Cir. 1987) (internal quotations and citations simplified). *See also Tax Analysts*, 294 F.3d 71, 79 ("in 1986, Congress amended the exemption . . . deleting any requirement that the information be 'investigatory . . . [a]nd the legislative history makes it clear that Congress intended the amended exemption to protect both investigatory and non-investigatory materials.") (internal citations omitted).

To be sure, *Keys* involved withholdings by the FBI, but in the context of the withholdings challenged here, the distinction between a pure law-enforcement agency and ODNI as a mixed-function agency is one without a difference because its only consequence is whether ODNI "is accorded greater deference." *Espinosa v. Dep't of Justice*, 869 F. Supp. 2d 25, 29 (D.D.C. 2012)

16

(applying the standard set out in *Keys*); *see Tax Analysts,* 294 F.3d at 77.   In this instance, the materials protected by Exemption 7(E) straightforwardly serve ODNI's law enforcement purposes and the level of deference is of no moment.  The statutory law enforcement mission giving rise to these records is to "combin[e] terrorist travel intelligence operations and law enforcement planning and operations into a cohesive effort to intercept terrorists, find terrorist travel facilitators, and constrain terrorist mobility."  Ewing Decl. at ¶ 78; 50 U.S.C. § 404o(f)(1)(F).  Development and maintenance of a "consolidated watchlist" as described by Mr. Ewing, *id.*, is plainly a law enforcement activity conducted for the immediate purpose of satisfying this law enforcement mission.  *See Concepcion v. U.S. Customs and Border Prot.*, --- F. Supp. 2d ---, 2012 WL 6019299 at *7 ("the names of law enforcement databases" are a method used to thwart the entry of terrorists to the United States).  And the information over which ODNI has invoked Exemption 7 provides the basis for "conducting the analysis . . . for watchlisting or screening decisions."  *Id.*  There can be no doubt that the information withheld by ODNI pursuant to Exemption 7(E) meets this standard.

Nor is it the case, as suggested by Plaintiff's brief, that invocation of subpart 7(E) requires the agency to identify a specific investigation.  Rather, Exemption 7(E) provides categorical protection to information related to law enforcement techniques."  *Smith v. ATF*, 977 F. Supp. 496, 501 (D.D.C. 1997).  Even if a law enforcement technique itself is disclosed as a general matter, if the public is not aware of the particular manner or specific circumstances in which such technique is employed, Exemption 7(E) applies when disclosure of those techniques could frustrate law enforcement. *See, e.g., Blanton v. DOJ*, 63 F. Supp. 2d 35, 49–50 (D.D.C. 1999); *Coleman v. FBI*, 13 F. Supp. 2d 75, 83–84 (D.D.C. 1999).  Here, ODNI reasonably concluded that "potential terrorists would use [] knowledge" of the data sets relied on and the data provider agencies "to identify system vulnerabilities and gaps as they seek alternative means to gain access to the United States and to securely transfer funds to support terrorist operations in this country."  *Id.* at ¶ 80; *See Concepcion* at *7 (disclosure of "the names of law enforcement databases" queried by CBP "would enable potential violators to design strategies to circumvent

the examination procedures developed by CBP"); *Vazquez v. Dep't of Justice*, 887 F. Supp. 2d 114, 117 (D.D.C. 2012) (applications of a data set are "a procedure for law enforcement investigations covered by exemption 7(E).") (internal quotations omitted).  Because Exemption 7(E) may properly be invoked without reference to any specific investigation and because ODNI has met the standards for its assertion, summary judgment is warranted.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant ODNI's motion for summary judgment.


Dated: June 28, 2013                              Respectfully submitted,

                                                   STUART DELERY
                                                  Acting Assistant Attorney General

                                                   RONALD C. MACHEN JR.
                                                   United States Attorney
                                                   District of Columbia

                                                  ELIZABETH J. SHAPIRO
                                                  Deputy Branch Director,
                                                   Federal Programs Branch

                                                   _/s/ Eric J. Soskin_____
                                                  ERIC J. SOSKIN  (PA Bar No. 200663)
                                                  Trial Attorney
                                                  United States Department of Justice
                                                  Civil Division, Federal Programs Branch
                                                  20 Massachusetts Avenue, N.W.
                                                  Washington, D.C. 20530
                                                  Telephone: (202) 353-0533
                                                  Fax: (202) 305-8517
                                                  Email: eric.soskin@usdoj.gov

                                                  Attorneys for Defendant