**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) ) |
|    Plaintiff, | ) |
|    v. | ) Civil Action No. 1:12-cv-1282-JEB |
| | ) |
| OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE | ) ) ) |
|    Defendant. | ) ) |

**PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY**
**JUDGMENT AND OPPOSITION TO PLAINTIFF'S REPLY IN SUPPORT OF**
**SUMMARY JUDGMENT**

Plaintiff Electronic Privacy Information Center ("EPIC") hereby provides a Reply in support of its Cross-Motion for Summary Judgment, dkt. No. 12, and its Opposition to Defendant Office of the Director of National Intelligence's ("ODNI's") Reply in Support of Summary Judgment, dkt. No. 15.

**INTRODUCTION**

Plaintiff the Electronic Privacy Information Center ("EPIC") opposes Defendant Office of the Director of National Intelligence's ("ODNI") June 28, 2013 Reply in Support of Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment in favor of EPIC. EPIC continues to dispute the agency's assertion of certain FOIA exemptions. EPIC also seeks an order compelling ODNI to conduct a segregability analysis with regard to the documents the agency has withheld in full and to release the segregable portions or, in the alternative, for the court to conduct *in camera*

inspection of the documents in dispute to determine whether they may be properly withheld in full.

**ARGUMENT**

## I.     The Agency Has Wrongly Withheld Records Under Exemption 3

FOIA Exemption 3 permits an agency to withhold responsive records "specifically exempted from disclosure by statute," if the statute

> (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3).

FOIA Exemption 3 requires a two-prong standard of review assessing "[f]irst, is the statute in question a statute of exemption as contemplated by exemption 3? Second, does the withheld material satisfy the criteria of the exemption statute?" *Fitzgibbon v. CIA*, 911 F.2d 755, 761 (D.C. Cir. 1990) (internal citations omitted). The standard of review for Exemption 3 applies to the "sources and methods" exemption cited by the agency and requires a de novo review by the court. *James Madison Project v. CIA*, 605 F. Supp.2d 99, 109 (D.C.C. 2009) (citing *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1384-88 (D.C. Cir. 1979). "The agency bears the burden of proving that the withheld information falls within the exemption it invokes." *EPIC v. NSA*, 678 F.3d 926, 932 (D.C. Cir. 2012) (citations omitted).

The agency withheld 21 documents in full that consist of "Deletion Issue Trackers," "Deletion Issue Reports," and "Deletion Issue Tracker Emails" (hereinafter "Deletion Tracker documents"). *Ewing Decl.* at ¶ 37.c.ii-iv. The Deletion Tracker

2

documents are used to assess possible issues with timely deletion of records from specific datasets. *Ewing Decl.* at ¶¶ 55-57.

Although courts give deference to intelligence agencies with respect to what constitutes "sources and methods," it is not complete deference. *See Ray v. Turner*, 587 F.2d 1187, 1219 (D.C. Cir. 1978) (stating that there is no presumption against In camera review in national security cases). The defendant must still show that the information withheld "can reasonably be expected to lead to unauthorized disclosure of intelligence methods and sources." *Assassination Archives and Research Center v. CIA.*, 334 F.3d 55, 58 (D.C. Cir. 2003) (internal citations and quotations omitted).

The ODNI has failed to make a reasonable or plausible connection between the documentation of failures to timely delete information from certain databases and the disclosure of intelligence sources and methods. In contrast, the Court in *CIA v. Sims* reasonably "conclude[d] that MKULTRA researchers [were] 'intelligence sources' within the broad meaning of § 102(d)(3) because these persons provided, or were engaged to provide, information the Agency needs to fulfill its statutory obligations with respect to foreign intelligence." *Sims* 471 U.S. at 174.

The agency releases more thorough information about the Terrorist Identities Datamart Environment ("TIDE") database.[1] A fact sheet about TIDE describes what it is; what conduct warrants inclusion in TIDE; how information from TIDE is used for watchlists; how many names are in TIDE; and the number of names removed from TIDE in 2012. The Deletion Tracker documents withheld "are used to evaluate instances in which 'records in specific datasets were possibly not deleted in time' (in accordance with

---

[1] *See* National Counterterrorism Center, *Terrorist Identities Datamart Environment (TIDE)*, *available at* http://www.nctc.gov/docs/Tide_Fact_Sheet.pdf.

an agreement with a data provider agency) . . . ." Def. MSJ Br. at 22 (citing Ewing Decl.

at ¶¶ 55-57). The deference granted to agencies regarding national security matters does

not remove the obligation that the agency has to provide a logical or plausible

justification for invoking the exemption. *See Larson v. Dep't of State*, 565 F.3d 857, 862

(D.C. Cir. 2009).

EPIC argued that the defendant has not met its burden and proved that the

Deletion Tracker documents fall under Exemption 3. Furthermore, EPIC argued in the

alternative that to the extent Exemption 3 under 50 U.S.C. § 403-1(i)(1) is applicable, the

defendant must release the non-applicable portions.

The defendant suggests that segregability is different for records held under

Exemption 3 Def. Reply Br. at 6, but segregability is still applicable under Exemption 3

claims. As this court has noted, "a reviewing court must still assure itself that the material

withheld is actually exempted by the claimed statute and that the exempt material *cannot*

*be segregated from the non-exempt material appearing in the same records. EPIC v.*

*DOJ*, 511 F.Supp.2d 56, 66-67 (D.C.C. 2007) (internal citations omitted) (emphasis

added). "The 'segregability' requirement applies to all documents and all exemptions in

the FOIA." *Center for Auto Safety v. E.P.A.*, 731 F.2d 16, 21 (D.C. Cir. 1984). Thus,

regardless of whether the defendant can make its case for the applicability for Exemption

3 to some portion of the disputed documents, those portions of the document that do not

fall under the exemption still need to be segregated.

**II. The Agency Has Improperly Withheld Documents Under Exemption 5**

ODNI mischaracterizes the D.C. Circuit's precedent regarding the factual/deliberative distinction. Even in the cases cited by ODNI, the courts acknowledge that generally factual material must be disclosed. Only "occasionally" will factual material reveal the deliberative process and thus, be exempt from the FOIA. *Goodrich Corp. v. EPA,* 593 F. Supp. 2d 184, 189 (D.D.C. 2009).

As discussed in EPIC's Motion for Summary Judgment, the D.C. Circuit courts routinely distinguish between factual material, which must be disclosed, and material embodying officials' opinions, which may be withheld. Dkt. no. 12. Cases cited by EPIC are not "scattershot." They demonstrate a consistent pattern of distinction between factual material and deliberative material. *See Petroleum Info. Corp. v. U.S. Dept. of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992), *citing EPA v. Mink,* 410 U.S. 73, 87-91 (1972)(endorsing the fact/opinion distinction); *Quarles v. Department of Navy,* 893 F.2d 390, 392 (D.C. Cir.1990) (observing that "the prospect of disclosure is less likely to make an adviser omit or fudge raw facts, while it is quite likely to have just such an effect" on materials reflecting agency deliberations). *Bristol-Myers Company v. FTC,* 424 F.2d 935, 939 (D.C. Cir. 1970) ( holding that "[p]urely factual reports and scientific studies cannot be cloaked in secrecy by an exemption designed to protect only 'those internal working papers in which opinions are expressed and policies formulated and recommended'"); *Playboy Enterprises, Inc. v. Dep't of Justice*, 677 F.2d 931, 936 (D.C. Cir. 1982) (finding that the factual material in a government report was not protected under the deliberative process privilege and must be released); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 858 (D.C. Cir. 1980) (holding that memoranda from regional counsel issued in response to requests for interpretations of regulations were not exempt under the

deliberative process privilege because they were "straightforward explanations of agency regulations").

 "Although purely factual information is generally not protected under the deliberative process privilege, such information can be withheld when 'the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations.' *Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 796 F. Supp. 2d 13, 27 (D.D.C. 2011) *quoting In re Sealed Case*, 121 F.3d 729, 736 (D.C. Cir. 1997). That is not the case here. As EPIC discussed in EPIC's Motion for Summary Judgment, the agency's description of the withheld documents indicates that they contain information that is clearly factual, the withheld documents are "notifications to the NCTC compliance team of issues that have occurred and that required further review." Dkt. no 12, *citing* Mark Ewing Decl. at 39. According to Mr. Ewing, these reports contain "factual details." *Id.* at 40. The very fact that there were deletion and compliance issues is not, itself, a part of the deliberative process. The agency's decision about how to deal with this may involve deliberative processes, but the incidents themselves are not "deliberative." Nor are those details "inextricably" intertwined with the deliberative process. For this reason, incident reports such as these are routinely disclosed under FOIA. *See e.g. Antonelli v. Federal Bureau of Prisons,* 623 F.Supp.2d 55 (D.D.C. 2009); *Daisy Mfg. Co., Inc. v. Consumer Products Safety Commission,* 133 F.3d 1081, 1082 (8th Cir. 1998) (noting that the Commission was required to turn over incident reports).

 The agency's decision to refer to these documents "drafts" does not affect the analysis. Despite the agency's assertions, case law makes clear that drafts are not always

privileged. *See Arthur Andersen & Co. v. IRS,* 679 F.2d 254, 257 (D.C. Cir. 1982);

*Reliant Energy Power Generation, Inc. v. F.E.R.C.,* 520 F. Supp. 2d 194, 204 (D.D.C.

2007) (holding that drafts are not "*per se* exempt from disclosure"); *Judicial Watch, Inc.*

*v. U.S. Postal Serv.,* 297 F. Supp. 2d 252, 261 (D.D.C. 2004). Nor are agency officials'

characterization of documents given total deference by courts, as the agency has claimed.

Def. Reply at 11. While a document's characterization as a "draft" is one factor in a

court's determination, an agency's representation that something is a "draft" is simply not

sufficient to *prove* that a document can be withheld under Exemption 5. The agency must

provide additional information to the plaintiff and the court in order to justify its

withholdings. The agency has failed to provide that justification here.

Many court decisions establish that the agency must do more than just rubber-

stamp a document with "draft" in order to withhold it. *See e.g., SafeCard Services, Inc. v.*

*S.E.C.,* 926 F.2d 1197 (D.C. Cir. 1991) (finding that "in order to carry its burden, the

agency must describe not only the contents of the document but also enough about its

context, *viz.* the agency's decisionmaking process, to establish that it is a pre-decisional

part thereof" and that "[b]ecause the SEC has failed to disclose the substance of those

final decisions, and has failed to explain the decisionmaking process in such a way as to

make it clear that there is no need for such disclosure, it has not met its burden of

demonstrating that the deliberative process exemption is applicable).

A failure by the agency to "indicate whether these drafts were (1) adopted

formally or informally, as the agency position on an issue; or (2) used by the agency in its

dealings with the public… will defeat a claim of privilege." *Judicial Watch, Inc. v. U.S.*

*Postal Serv.,* 297 F. Supp. 2d 252, 261 (D.D.C. 2004)(internal quotations omitted).

Furthermore, as EPIC discussed in EPIC's Motion for Summary Judgment, even if some factual material is "inextricably intertwined," all segregable portions must be disclosed. "FOIA § 552(b) requires that even if some materials from the requested record are exempt from disclosure, any "reasonably segregable" information from those documents must be disclosed after redaction of the exempt information unless the exempt portions are "inextricably intertwined with exempt portions." *Johnson v. Executive Office for U.S. Attorneys,* 310 F.3d 771, 776 (D.C. Cir. 2002), *citing* 5 U.S.C. § 552(b); *Mead Data Cent., Inc. v. Dep't of the Air Force,* 566 F.2d 242, 260 (D.C.Cir.1977); *Trans-Pacific Policing Agreement v. United States Customs Serv.,* 177 F.3d 1022, 1028 (D.C.Cir.1999). "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" for its non-segregability. *Id.* The agency's descriptions of withheld documents are insufficient to meet this standard.

### III. The Agency Has Improperly Withheld Documents Under Exemption 7(E)

#### A. ODNI's Status As A Law Enforcement Agency

ODNI treats it as a foregone conclusion that, because it helps law enforcement agencies, it necessarily has a law enforcement function for the purposes of FOIA. However, not all agencies that aid in law enforcement investigations are themselves law enforcement agencies. *Weissman v. Cent. Intelligence Agency*, 565 F.2d 692, 701 (D.C. Cir. 1977).

Further, contrary to ODNI's assertions, EPIC did not take Mr. Ewing's statement out of context; Mr. Ewing stated clearly that ODNI is not a law enforcement agency. The paragraphs preceding and following his statement, and indeed the rest of his sentence, explain that ODNI's statutory mandate requires ODNI to conduct information-gathering,

and that some of that information is used by law enforcement agencies. Dkt. no. 11 at 30-1. Mr. Ewing's statements describe the ways that other law enforcement agencies take advantage of NCTC's intelligence gathering, and ODNI explicitly characterizes NCTC as "'all-source intelligence support' to law enforcement agencies." *Id*. at 31. Mr. Ewing's declaration does not "make clear" that ODNI is a mixed law-enforcement agency – it states exactly the opposite. Mr. Ewing's declaration explains that ODNI is an intelligence-gathering agency whose work supports law enforcement agencies in their own mandates. *Id*.

Thus, ODNI contradicts itself in its reply. In Defendant's Motion for Summary Judgment, ODNI stated, "As Mr. Ewing explains, although NCTC is not a 'law enforcement agency,' it does 'perform work related to law enforcement investigations or prosecutions' pursuant to its missions of 'integrating all instuments of national power, including… law enforcement activities' for counterterrorism activities, to provide 'all-source intelligence support' to law enforcement agencies, and to ensure that 'such agencies have access to and receive intelligence needed to accomplish their assigned activities.'" Dkt. no. 11 at 30-1. ODNI now claims, "Read in context, Mr. Ewing's statement makes clear that NCTC is very much an agency with a mixture of law-enforcement and non-law enforcement functions." Dkt. no. 15 at 15. As ODNI cites in its Reply, "FOIA makes no distinction between agencies whose principal function is criminal law enforcement and agencies with both enforcement and administrative functions." *Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002). Thus, the difference between Mr. Ewing's declaration and ODNI's current position regarding ODNI's status as a law enforcement agency amounts to a complete turnaround. ODNI has conceded that

it is not a law enforcement agency, and its current attempt to reframe that concession is specious.

## B.  An Agency's "Specific Investigation" Requirement

Even if ODNI had not originally conceded that it is not a law-enforcement agency, it has stated in its Reply that it identifies itself as "very much an agency with a mixture of law-enforcement and non-law enforcement functions." Dkt. No. 15 at 15. If EPIC were to accept this characterization of ODNI, the government would still fall short of meeting its burden to describe its investigation. As EPIC noted in its Cross-Motion for Summary Judgment, a court assessing an Exemption 7 withholding by a mixed-function agency considers "investigations which focus directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions," and that "the purpose of the investigation [i]s the crucial factor; -that, to cross Exemption 7's threshold, the information at issue must [be] gathered in the course of 'an inquiry as to an identifiable possible violation of law.'" Dkt. no. 12 at 20, citing *Birch v. U.S. Postal Serv.*, 803 F.2d 1206, 1210 (D.C. Cir. 1986). The *Birch* case was decided the same year as the 1986 FOIA Amendments, and makes reference to them specifically. *Birch*, 803 F. 2d at 1211 note 39. The Court explains, "We have no reason to doubt the continuing vitality of *Rural Hous. Alliance,*" the case on which the *Birch* court based its analysis. The Court continued, "While FOIA was amended after *Rural Hous. Alliance,* the phrase 'law enforcement purpose,' which that opinion construed, was left unchanged." *Id*. at 1210. ODNI seeks to discredit EPIC's analysis, but both *Birch* and *Rural Housing Alliance* withstood the 1986 FOIA amendments and remain good law. Thus, even if ODNI were to be categorized as a "mixed function agency," it would still

be required to establish that the materials it seeks to withhold under Exemption 7(E) are specific enough to describe to the court "an identifiable possible violation of law." *Birch*, 803 F.2d at 1210.

Finally, as with Exemptions 3 and 5, even if the agency establishes that it has properly withheld portions of documents under Exemption 7(E), "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b); *see also Roth*, 642 F.3d at 1167; *North*, 774 F.Supp.2d  at 222 (D.D.C. 2011). Here, ODNI has not clearly demonstrated in the Vaughn Index or through its declarations that the entirely withheld documents contain no reasonably segregable factual information.

## **CONCLUSION**

For the foregoing reasons, this Court should grant EPIC's Cross-Motion for Summary Judgment.

Respectfully submitted,

MARC ROTENBERG (DC Bar # 422825)

_____/s/ Ginger P. McCall_____
GINGER P. MCCALL (DC Bar # 1001104)
JULIA HORWITZ[*]
JERAMIE SCOTT[**]

Electronic Privacy Information Center
1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009

---

[*] Ms. Horwitz is barred in the State of Maryland. Her DC Bar application is pending.
[**] Mr. Scott is barred in the State of New York. His DC Bar application is pending.

(202) 483-1140
*Counsel for Plaintiff*

Dated: July 12, 2013