UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br><br>    Plaintiff,<br><br>        v.<br><br>OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE,<br><br>    Defendant. | Civil Action No. 12-1282 (JEB) |

## MEMORANDUM OPINION

Plaintiff Electronic Privacy Information Center, a Washington-based nonprofit, submitted a Freedom of Information Act request to the Office of the Director of National Intelligence seeking guidelines describing how the National Counterterrorism Center retrieves and safeguards information from other federal agencies. After a search and review of records, the agency located 29 responsive documents. It released eight in part but declined to disclose the remaining 21, invoking a number of specific statutory exemptions to justify its withholding. Plaintiff then brought this suit challenging the adequacy of the agency's search, the propriety of many of its withholdings, and its segregability analysis. Believing that it has complied with its FOIA obligations, Defendant has now moved for summary judgment. As the Court agrees, it will grant that Motion.

**I.    Background**

After the Director of National Intelligence, the Attorney General, and the Director of the NCTC signed an updated version of the "Guidelines for Access, Retention, Use, and

Dissemination by the NCTC and Other Agencies of Information in Datasets Containing Non-Terrorism Information," Plaintiff submitted four FOIA requests to ODNI. See Def. Mot. at 2. The first, sent on March 28, 2012, asked for "the 'priority list' of databases that [NCTC] plans to copy." Id., Exh. 1 (Declaration of ODNI Chief Management Officer Mark Ewing), ¶ 9. The second, filed on June 14, 2012, requested information about the privacy procedures NCTC employs when handling the datasets described in the Guidelines. See id., ¶ 17; Def. Mot. at 2-3. The third and fourth requests, filed on June 14 and 15, 2012, sought documents describing the way NCTC works with other agencies to share the datasets and "guidelines or legal memoranda" discussing NCTC's interpretation of certain language in the Guidelines. See Ewing Decl., ¶¶ 27-28.

In response to EPIC's first request, ODNI produced seven pages partially redacted pursuant to FOIA Exemptions 1, 3, 5, and 7(E). See id., ¶¶ 15, 37(d). The second request prompted ODNI to release, at least in part, over 160 pages from four responsive records, but the agency also withheld portions of those pages pursuant to Exemptions 1, 2, 3, and 6. See id., ¶¶ 16, 19, 37(b). The agency's search did not turn up any documents responsive to the fourth request. See id., ¶ 19. None of ODNI's actions in relation to these three requests is challenged.

Instead, only ODNI's disclosures with respect to EPIC's third FOIA request are at issue here. In response to that request, ODNI released parts, but withheld the remainder, of eight documents pursuant to Exemptions 1, 2, and 6. It also withheld 21 documents in full. See Def. Mot. at 8. Of those 21 records, eleven are one-page documents described as "Deletion Issue Trackers." See Ewing Decl., ¶ 37(c)(ii). DITs describe instances in which "records in specific data-sets were possibly not deleted on time." Id., ¶ 56. Four others, totaling eight pages, are described as "Deletion Issue Reports," see id., ¶¶ 37(c)(iii), 56, which are like DITs but go into

greater detail. Id. The remaining six documents ODNI withheld in full – records totaling 19 pages – are described as "Deletion Issue Tracker Emails," which are like DITs but are used for less consequential issues. Id., ¶ 78.

ODNI withheld all 21 documents because they pertain to "intelligence sources and methods," including the names of specific datasets and data-provider agencies, as well as other "bits of information that would provide insights into the particular sources and methods relied upon by NCTC analysts to produce terrorist intelligence reports, generate law enforcement investigative leads," and carry out other counterterrorism activities. Id., ¶¶ 54-58, 78-80. For those reasons, ODNI claims that all 21 records are protected in full by Exemption 3 and the National Security Act of 1947, as well as by Exemption 7(E). See Def. Mot. at 8, 21. According to the agency, moreover, all of the records are draft documents that remain "subject to change," Ewing Decl., ¶ 67, and contain "deliberative discussions among ODNI employees regarding possible approaches to take," "candid internal discussions," and "recommendations for actions." Id. As a result, ODNI also contends that the documents are protected by Exemption 5. See Def. Mot. at 9. The agency maintains, finally, that portions of some of the 21 documents are also exempt from disclosure pursuant to Exemptions 2 and 6. See Ewing Decl., ¶¶ 37(c)(iii), 49, 72.

After exhausting the available administrative remedies, EPIC initiated this suit challenging ODNI's position. See Compl., ¶ 52. ODNI now moves for summary judgment, asserting that it has engaged in a reasonable search for responsive documents, properly withheld records pursuant to the aforementioned exemptions, and released all reasonably segregable information. See Def. Mot. at 10-34. Plaintiff has also filed a Cross-Motion for Summary Judgment. By failing to address each argument in ODNI's Motion, however, EPIC has conceded that: (1) ODNI's search was adequate; (2) the information redacted from the documents

produced in part was properly withheld pursuant to the cited exemptions; and (3) ODNI properly claimed the protection of Exemptions 1, 2, and 6 with regard to portions of the 21 documents withheld in full.  See Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), aff'd, 98 F. App'x 8 (D.C. Cir. 2004).  As a result, all that remains of Plaintiff's challenge are its arguments relating to: (1) ODNI's decision to withhold 21 records in full pursuant to Exemptions 3, 5, and 7(E); and (2) the sufficiency of ODNI's segregability analysis.  See Pl.'s Opp. and Cross-Mot. at 7-22.

Because some of ODNI's explanations for withholding certain documents in full were difficult to evaluate in the abstract, the Court ordered the agency to provide copies for *in camera* inspection.  See Minute Order of Sept. 19, 2013.  The Government delivered the documents (including one that was classified) to the Court on September 24, and the Court has now completed its review.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477

U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment.  See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter *de novo*.'" U.S. Dep't of Justice v. Reporters Comm. for the Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

**III.   Analysis**

Congress enacted FOIA in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(4)(B); Reporters Comm., 489 U.S. at 755. "At all times," moreover, "courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure'. . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

With those principles in mind, the Court now turns to Plaintiff's two central challenges to Defendant's Motion. First, EPIC asserts that ODNI improperly withheld 21 records in full pursuant to Exemptions 3, 5, and 7(E). And second, it claims that even if ODNI's withholdings were justified, the agency failed to release the reasonably segregable portions of those documents. The Court will address each in turn.

### A. Propriety of Defendant's Withholdings

Nine categories of information are exempt from FOIA's broad rules of disclosure. 5 U.S.C. § 552(b)(1)-(9). These exemptions are to be narrowly construed, see Dep't of Air Force v.

Rose, 425 U.S. 352, 361 (1976), and this Court can compel the release of any records that do not satisfy the requirements of at least one exemption.  See Reporters Comm., 489 U.S. at 755.

    1.  *Overall Sufficiency of Government's Documentation and Explanations*

In order to assist a court in its *de novo* review of the withholdings and to allow the party seeking access to documents to engage in effective advocacy, the government must furnish "detailed and specific information demonstrating 'that material withheld is logically within the domain of the exemption claimed." Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 30 (D.C. Cir. 1999) (quoting King v. U.S. Dep't of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987)).  Courts in this Circuit have stressed that the government cannot justify its withholdings on the basis of summary statements that merely reiterate legal standards or offer "far-ranging category definitions for information." King, 830 F.2d at 221; see also Campbell, 164 F.3d at 30 (emphasizing that an agency's explanations will not suffice if they "'are conclusory, merely recit[e] statutory standards, or if they are too vague or sweeping'") (quoting Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv., 608 F.2d 1381, 1387 (D.C. Cir. 1979)).

While FOIA's individual exemptions impose their own tailored evidentiary burden, as a starting point, the government must meet five overarching requirements for each withholding. See King, 830 F.2d at 224. The government must:

> (1) [I]dentify the document, by type and location in the body of documents requested; (2) note that [a particular exemption] is claimed; (3) describe the document withheld or any redacted portion thereof, disclosing as much information as possible without thwarting the exemption's purpose; (4) explain how this material falls within one or more of the categories . . . ; and [if the exemption requires a showing of harm] (5) explain how disclosure of the material in question would cause the requisite degree of harm.

Id.

ODNI has, for the most part, met each of these requirements. The Ewing Declaration describes the 21 documents withheld, often in some detail, and it spells out the rationale for each exemption claimed. See Ewing Decl., ¶¶ 36-80. Of course, the Declaration could not have described the documents perfectly; to do so would defeat the very purpose of FOIA's exemptions. In circumstances where an in-depth description of a withholding would risk disclosure of sensitive information, though, the Government may supplement its explanations with non-public affidavits and other documents for *in camera* review by the court. See Simon v. Dep't of Justice, 980 F.2d 782, 784 (D.C. Cir. 1992). ODNI has done just that.

Even where documents have not been produced for court review, assertions of privilege in the national-security context deserve special attention. See Ctr. For Nat'l Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 926-27 (D.C. Cir. 2003) (citing Zadvydas v. Davis, 533 U.S. 678, 696 (2001)). In such context, "the reviewing court must give 'substantial weight'" to agency declarations. ACLU v. U.S. Dep't of Justice, 265 F. Supp. 2d 20, 27 (D.D.C. 2003) (quoting King, 830 F.2d at 217); Ctr. For Nat'l Sec. Studies, 331 F.3d at 927 (courts have "consistently deferred to executive affidavits predicting harm to the national security"). Against this backdrop, the Court will now consider Plaintiff's specific challenge to Defendant's withholdings.

2. *Applicable Exemptions*

ODNI seeks to withhold 21 documents in full under Exemptions 3, 5, and 7(E). In addition, the agency claims – and EPIC apparently concedes – that portions of many of those 21 documents are protected from disclosure under Exemptions 1, 2, and 6. Although ODNI argues that several exemptions protect each document from disclosure, the Court may grant the agency summary judgment as long as each record is exempt under at least one exemption. See Simon, 980 F.2d at 785. As the Court concludes that Exemption 3 protects all 21 documents in full, it

need not address ODNI's arguments with respect to Exemptions 5 or 7(E), and ODNI need not rely on EPIC's concessions with respect to Exemptions 1, 2, or 6.

Exemption 3 permits agencies to withhold from disclosure records "specifically exempted from disclosure by statute . . . [provided that such statute either] (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). In analyzing documents withheld pursuant to Exemption 3, the Court need not examine "the detailed factual contents" of the documents. Morley v. CIA, 508 F.3d 1108, 1126 (D.C. Cir. 2007). Rather, "'the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.'" Id. (quoting Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd., 830 F.2d 331, 336 (D.C. Cir. 1987)).

Defendant invokes Exemption 3 here based on the protection of Section 102(A)(i)(1) of the National Security Act of 1947, among other statutes. Section 102A requires that the Director of National Intelligence "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403-1(i)(1); see also Wolf v. C.I.A., 473 F.3d 370, 377 (D.C. Cir. 2007) (describing ODNI's obligations under 2004 amendments to the Act). It is indisputable that Section 102A qualifies as a withholding statute for the purpose of Exemption 3, see, e.g., ACLU v. Dep't of Defense, 628 F.3d 612, 619 (D.C. Cir. 2011), as it "refers to particular types of matters to be withheld" – namely, "intelligence sources and methods." Id. (quoting 5 U.S.C. § 552(b)(3), 50 U.S.C. § 403-1(i)(1)). Indeed, the Supreme Court has noted that the Act provides "wide-ranging authority" to the intelligence community to protect its sources and methods; after all, in passing the Act, "Congress simply and pointedly protected all sources of intelligence that

provide, or are engaged to provide, information the [CIA] needs" to gather and analyze intelligence. CIA v. Sims, 471 U.S. 159, 169-70, 177 (1985). The only remaining question regarding this exemption, then, is whether the records ODNI has withheld "satisfy the criteria of the exemption statute." Fitzgibbon v. CIA, 911 F.2d 755, 761 (D.C. Cir. 1990). In other words, do the documents contain "intelligence sources and methods" within the meaning of the Act?

EPIC argues that they do not. See Opp. and Cross-Mot. at 9-10. Even if the names of specific datasets and data-provider agencies are sources and methods, Plaintiff argues that the "date the issue was identified, the date the records were due to be deleted, the number of records deleted, the exposure of access, and the brief description of the issue" are not properly exempt from disclosure because they are too far afield from the intelligence community's core mission and thus do not threaten operations. See id. at 9-11.

Plaintiff's reading of the Act, however, is too limited. The Supreme Court has confirmed time and again that "it is the responsibility of the [intelligence community], not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the . . . intelligence-gathering process." Sims, 471 U.S. at 180. In the intelligence context, moreover, "bits and pieces of data may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself." Id. at 178 (internal quotation marks omitted). For that reason, the NSA's protection of sources and methods is a "near-blanket FOIA exemption," Whalen v. U.S. Marine Corps, 407 F. Supp. 2d 54, 59 n.5 (D.D.C. 2005), that includes the "power to withhold superficially innocuous information on the ground that it might enable an observer to discover the identity of an intelligence source." Sims, 471 U.S. at 178.

Defendant avers that Exemption 3 justifies withholding all 21 documents – composed of the Deletion Issue Trackers, Deletion Issue Reports, and Deletion Issue Tracker Emails – because they "consist entirely of information containing sensitive and/or classified sources and methods information, specifically including dates that records were obtained and deleted by NCTC, the number of records deleted, and information about who has access to the dataset and the nature of the issue." Def. Mot. at 22 (citing Ewing Decl., ¶¶ 55-57). This information, the agency contends, "would reveal sensitive and/or classified sources and methods information, which, if revealed, would likely assist 'those who would seek to penetrate, detect, prevent, or damage' NCTC intelligence operations." Id. (quoting Ewing Decl., ¶ 53). "[E]ven the release of pieces of information on these documents," moreover, "innocuous thought [*sic*] they may seem individually, 'would assist adversaries in piecing together bits of information that would provide insights into the particular sources and methods relied upon by NCTC analysts.'" Id. (quoting Ewing Decl., ¶ 54).

Although at first glance the records at issue here may appear technical – and thus of little help to potential adversaries – the Court, after its *in camera* review, is persuaded that this "superficially innocuous information" could compromise intelligence operations. There is little doubt that the names of particular datasets and the agencies from which they originate would allow interested onlookers to gain important insight into the way ODNI and its partners operate. See Ewing Decl., ¶ 43 (asserting that release of information about "what datasets are routinely reviewed by NCTC . . . might assist [terrorists] in identifying gaps and seams" in U.S. intelligence and counterterrorism programs). Information regarding the number of records deleted, similarly, could help counterintelligence personnel deduce the scope of U.S. intelligence operations. See Aftergood v. CIA, 355 F. Supp. 2d 557, 562 (D.D.C. 2005) (upholding

intelligence agency's withholding of aggregate intelligence budget data on similar grounds). And the date an issue was identified and the date records were due to be deleted could help such personnel understand when ODNI has access to intelligence data for analysis. Courts in this Circuit have held unequivocally that similar "internal organizational data" constitute intelligence sources and methods protected under Exemption 3. See, e.g., Schoenman v. FBI, 841 F. Supp. 2d 69, 83-84 (D.D.C. 2012) (information pertaining to "dissemination-control markings," "file numbers, and internal organizational data" properly withheld under Exemption 3); James Madison Project v. CIA, 605 F. Supp. 2d 99, 114 (D.D.C. 2009) (upholding application of Exemption 3 to CIA's "special practices and procedures" and "internal information concerning the CIA's organizational structure").

Having reviewed the relevant records *in camera*, and taking into account the "special deference owed to agency affidavits on national security matters," Schoenman, 841 F. Supp. at 84, the Court concludes that Exemption 3 protects the information ODNI has withheld.

B. Segregability

Plaintiff next objects that Ewing failed to analyze the segregability of the 21 documents withheld in full. See Opp. and Cross-Mot. at 7-8. FOIA requires that "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." Mead Data Cent., 566 F.2d at 260. On the other hand, an agency is not obligated to segregate non-exempt material if "the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." Neufeld v.

IRS, 646 F.2d 661, 666 (D.C. Cir. 1981), rev'd on other grounds by Church of Scientology of California v. IRS, 792 F.2d 153 (D.C. Cir. 1986).

While the Government is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013), this presumption of compliance does not obviate its obligation to carry its evidentiary burden and fully explain its decisions on segregability. See Mead Data Cent., 566 F.2d at 261. The agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks omitted); see also Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996) (determining Government affidavits explained nonsegregability of documents with "reasonable specificity").

Based on the Ewing Declaration and careful *in camera* review, the Court concludes that there is no material that could have been released in the 21 documents withheld in full. On the basis of "a line-by-line review of all [withheld] documents," the agency concluded that "all reasonably segregable, non-exempt information has been disclosed." Ewing Decl., ¶ 81. Indeed, as the Court has noted, Ewing asserted that "[releasing even] pieces of information on [the 21 documents], innocuous thought [*sic*] they may seem individually, 'would assist adversaries in piecing together bits of information that would provide insights into the particular sources and methods relied upon by NCTC analysts.'" Def. Mot. at 22 (quoting Ewing Decl., ¶ 54). The Court's review does not lead to a contrary conclusion. The D.C. Circuit, moreover, has found in favor of agencies based on less than that. See, e.g., Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776-77 (D.C. Cir. 2002) (holding that agency had met its segregability burden by

submitting Vaughn index and affidavit confirming only that line-by-line review had confirmed that no information could reasonably be segregated).

Finally, the Court notes that even if it found that pieces of information in the 21 documents withheld in full were not exempt from disclosure, the remaining information would amount to "an edited document with little informational value."  See Neufeld, 646 F.2d at 666.  Indeed, all that would be left would be a date here, an internal direction there.  Although the cost of releasing that information would be minimal, the Court sees no reason to impose any further burden on the agency.  Because the 21 documents in question contain no segregable material that could prove of interest, the Court finds that any such token release is unnecessary.

## IV.    Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Cross-Motion.  An Order consistent with this Opinion shall issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  October 9, 2013