**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 1:12-cv-1282-JEB |
| | ) |
| OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE | ) ) |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS

Plaintiff the Electronic Privacy Information Center ("EPIC") hereby moves for an order compelling Defendant Office of the Director of National Intelligence ("ODNI") to pay EPIC's attorneys' fees and costs in this lawsuit. EPIC's Freedom of Information Act ("FOIA") lawsuit forced disclosure of nearly 200 of pages of ODNI records. The records would have otherwise remained secret. EPIC is therefore eligible to recover fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E). EPIC's fees and costs total $8,828.50 and are supported by the attached affidavits, time records, and receipts. Pursuant to Local Rule 7(m), EPIC has conferred with ODNI to discuss any opposition to the relief sought. ODNI opposes this motion.

## FACTUAL BACKGROUND

On March 28, 2012, the New York Times reported that Attorney General Eric Holder had signed new guidelines for the National Counterterrorism Center ("NCTC"), which would relax restrictions on how counterterrorism analysts may retrieve, store, and

search information about Americans.[1] The Washington Post corroborated this story on

the same day.[2] These new guidelines allow the NCTC to make additional copies of entire

databases, and to mine those databases using complex algorithms.

The New York Times article referred to a "priority list" that was developed by the

NCTC, which set forth a list of databases that the Center planned to copy in their entirety.

However, officials declined to say which databases were included on this list.

**EPIC's First FOIA Request and Administrative Appeal**

In order to allow the public to assess the privacy risks inherent in the new guidelines,

on March 28, 2012, EPIC transmitted a written Freedom of Information Act request

("EPIC's First FOIA Request") to ODNI for "'the priority list' of databases that the National

Counterterrorism Center plans to copy." EPIC requested "News Media" fee status, based on

its well-established status as a "representative of the news media." *EPIC v. Dep't of

Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003). Additionally, EPIC asked for fee waiver.

On March 29, 2012, ODNI acknowledged receipt of EPIC's FOIA request and

assigned the request reference number DF-2012-00059. ODNI made no determination on

EPIC's fee waiver request or on its "news media" fee status. On June 8, 2012, EPIC

appealed ODNI's failure to respond to the request within 20 days ("EPIC's First FOIA

Appeal"). EPIC also renewed its request for "news media" fee status.  On June 15, 2012,

ODNI acknowledged receipt of EPIC's First FOIA Appeal.

---

[1] Charlie Savage, U.S. Relaxes Limits on Use of Data in Terror Analysis, New York Times, Mar. 22, 2012,
http://nytimes.com/2012/03/23/us/politics/us-moves-to-relax-some-restrictions-for-counterterrorism-
analysis.html?_r=1
[2] Sari Horwitz and Ellen Nakashima, New Counterterrorism Guidelines Permit Data on U.S. Citiens to be
Held Longer, Mar. 22, 2012, http://www.washingtonpost.com/world/national-security/new-
counterterrorism-guidelines-would-permit-data-on-us-citizens-to-be-held-
longer/2012/03/21/glQAFLm7TS_story.html?wprss=

**EPIC's Second FOIA Request and Administrative Appeal**

On June 15, 2012, EPIC transmitted, via facsimile, a second Freedom of

Information Act request ("EPIC's Second FOIA Request") for records related to Section

(B)(2) of NCTC guidelines. Section (B)(2)(a) details the process by which the NCTC can

obtain and copy datasets, and Section (B)(2)(d) establishes the procedures by which the

heads of departments or agencies can raise objections to the NCTC's requests for data.

Specifically, EPIC asked ODNI to disclose:

1. Terms and Conditions and related documents, as described in Section
   (B)(2)(a) of the NCTC Guidelines;

2. All documents related to disputes between department and agency heads and
   DNI, as described under Section (B)(2)(d) of the NCTC Guidelines.

EPIC requested "News Media" fee status, based on its well-established status as a

"representative of the news media" and for fee waiver. *EPIC v. Dep't of Defense*, 241 F.

Supp. 2d 5 (D.D.C. 2003). EPIC also asked ODNI to expedite the response to EPIC's

Second FOIA Request as it pertained to a matter about which there is an urgency to inform

the public about an actual federal government activity, and was made by a person primarily

engaged in disseminating information. 5 U.S.C. § 552(a)(6)(E) (2011). On July 5, 2012,

ODNI acknowledged receipt of EPIC's FOIA request and assigned the request reference

number DF-2012-00091. On July 19, 2012, EPIC appealed ODNI's failure to respond to

EPIC's Second FOIA Request within 20 days ("EPIC's Second FOIA Appeal"). EPIC also

renewed its request for "news media" fee status and for expedited processing. On August

14, 2012, ODNI acknowledged receipt of EPIC's Second FOIA Appeal.

**EPIC's Third FOIA Request and Administrative Appeal**

Also on June 15, 2012, EPIC transmitted, via facsimile, a third Freedom of

Information Act request ("EPIC's Third FOIA Request") for records regarding

acquisition of databases from other intelligence agencies, as described in the NCTC

guidelines. Specifically, EPIC asked ODNI to disclose:

1.   The guidelines and mechanisms for the correction or documentation of "inaccuracy or unreliability of [] information, and supplement incomplete information to the extent additional information becomes available;"

2.   Training materials used to "ensure that [] personnel use the datasets only for authorized NCTC purposes and understand the baseline and enhanced safeguards, dissemination restrictions, and other privacy and civil liberties protections they must apply to each such dataset;"

3.   Any information or documentation related to abuse, misuse, or unauthorized access of datasets acquired by NCTC (as indicated by the monitoring, recording, and auditing described in Section (C)(3)(d)(3));

4.   Written determinations by the Director of NCTC or designee regarding "whether enhanced safeguards, procedures, and oversight mechanisms are needed."

EPIC requested "News Media" fee status, based on its well-established status as a

"representative of the news media," *EPIC v. Dep't of Defense*, 241 F. Supp. 2d 5 (D.D.C.

2003), and for fee waiver.. EPIC also asked ODNI to expedite the response to EPIC's Third

FOIA Request as it pertained to a matter about which there is an urgency to inform the

public about an actual federal government activity, and was made by a person primarily

engaged in disseminating information. 5 U.S.C. § 552(a)(6)(E) (2011). On July 5, 2012,

ODNI acknowledged receipt of EPIC's FOIA request and assigned the request reference

number DF-2012-00090.

**EPIC's Fourth FOIA Request and Administrative Appeal**

Also on June 15, 2012, EPIC transmitted, via facsimile, a fourth Freedom of

Information Act request ("EPIC's Fourth FOIA Request") for records regarding NCTC

legal memoranda. Specifically, EPIC requested "any guidelines or legal memoranda

discussing NCTC's understanding and interpretation of the following standards used in

the NCTC Guidelines discussed above: 'reasonably believed to constitute terrorism

information,' 'reasonably believed to contain terrorism information,' and 'likely to

contain significant terrorism information.'"

EPIC requested "News Media" fee status, based on its well-established status as a

"representative of the news media," *EPIC v. Dep't of Defense*, 241 F. Supp. 2d 5 (D.D.C.

2003), and for fee waiver. EPIC also asked ODNI to expedite the response to EPIC's Fourth

FOIA Request as it pertained to a matter about which there is an urgency to inform the

public about an actual federal government activity, and was made by a person primarily

engaged in disseminating information. 5 U.S.C. § 552(a)(6)(E) (2011). On July 5, 2012,

ODNI acknowledged receipt of EPIC's FOIA request and assigned the request reference

number DF-2012-00092. ODNI also denied EPIC's request for expedited processing. On

July 19, 2012, EPIC appealed ODNI's failure to respond to EPIC's Fourth FOIA Request

within 20 days ("EPIC's Third FOIA Appeal"). EPIC also renewed its request for "news

media" fee status and for expedited processing.

**EPIC Filed Suit After the Agency Failed to Produce Any Documents**
**Responsive to EPIC's FOIA Requests and After Exhaustion of**
**Administrative Remedies**

EPIC filed suit against ODNI on August 1, 2012, after the agency failed to respond

to any of EPIC's Appeals. This was after the 20-day statutory deadline had elapsed for all

Appeals.

**In Response to EPIC's Lawsuit, ODNI Disclosed Responsive Documents**

ODNI filed its Answer to EPIC's Complaint on October 1, 2012. Shortly afterward, the parties agreed to limit the scope of EPIC's FOIA Requests. The modifications stipulated that EPIC's FOIA Requests would be limited to "records related to the revised NCTC guidelines of March 2012," and that EPIC's FOIA Requests would be limited to "documents that are final and not predecisional or deliberative in nature." This second stipulation expressly excluded, however, any responsive documents to EPIC's request for "any information or documentation related to abuse, misuse, or unauthorized access of datasets acquired by NCTC (as indicated by the monitoring, recording, and auditing described in Section (C)(3)(d)(3)."

Following the filing of this lawsuit and the stipulation between the parties, on December 14, 2012, ODNI released seven pages of partially redacted documents from three responsive records ("First Interim Response"). On February 12, 2013, ODNI released about 160 pages from four responsive documents ("Second Interim Response"). On March 11, 2013, ODNI released five pages from one document ("Third Interim Response"). In total, ODNI released around 200 pages of partially redacted records from 8 documents.

The agency filed a Motion for Summary Judgment on May 10, 2013. EPIC filed a Cross Motion for Summary Judgment and Opposition on June 14, 2013. The agency filed an Opposition and a Reply on June 28, 2013. EPIC filed a Reply on July 12, 2013. On September 19, 2013, this Court ordered the agency to produce all entirely withheld documents for *in camera* review. The agency filed its Notice of *In Camera* Submission

on September 24, 2013. On October 9, 2013, this Court issued an Opinion.

EPIC now seeks to recover fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E).

## STANDARD OF REVIEW

Before a court may award attorneys' fees in FOIA cases, it must first determine whether the plaintiff is eligible for a fee award. *Tax Analysts v. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992). The FOIA provides that in a lawsuit, "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). "A complainant has substantially prevailed if the complainant has obtained relief through either (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii).

If a plaintiff is eligible, the court must then determine whether the plaintiff is entitled to recover fees. *Id*. This Circuit employs a four-factor balancing test to determine a plaintiff's entitlement to attorney's fees. "The court should consider [four factors] in determining the appropriateness of an award of costs and attorney fees." *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C. Cir. 1977). The four factors are: 1) "the benefit to the public, if any, deriving from the case;" 2) "the commercial benefit of the complainant;" 3) "the nature of [the complainant's] interest in the records sought"; and 4) "whether the government's withholding of the records sought had a reasonable basis in law." H. Comm. on Gov't Operations and S. Comm. on the Judiciary, 94th Cong., *Freedom of Information Act and Amendments of 1974 (Pub. L. No. 93-502) Source Book,*

189-90 (J. Comm. Print 1975).

**I. EPIC Is Eligible for and Entitled to Recover Its Costs and Fees**

Irrespective of the outcome of the parties' cross-motions for summary judgment, EPIC is entitled to recover its fees and costs from ODNI in this matter. EPIC asks the Court to enter judgment as to EPIC's eligibility and entitlement to fees and to order further briefing as to the amount of costs and fees.

### A.  EPIC Meets the Requirements for Eligibility Under the FOIA

EPIC is eligible for fees under the FOIA because EPIC "substantially prevailed" in this case. 5 U.S.C. § 552(a)(4)(E). "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." *Id.* "A complainant has substantially prevailed if the complainant has obtained relief through … a judicial order, or an enforceable written agreement or consent decree. …" 5 U.S.C. § 552(a)(4)(E)(II). Furthermore, the D.C. Circuit has ruled that a proposed scheduling order that is adopted by the court qualifies as a "judicial order, or an enforceable written agreement or consent decree" under the FOIA. Where a FOIA plaintiff obtains documents pursuant to the court's adoption of a joint stipulation, the plaintiff prevails, since "the parties had stipulated that the defendant agency would produce the requested records by a date certain and the trial court approved the parties' joint stipulation." *Judicial Watch, Inc. v. DOJ*, 774 F. Supp. 2d 225, 228 (D.D.C. 2011) *appeal dismissed*, 11-5140, 2011 WL 3903437 (D.C. Cir. Aug. 10, 2011); *Davy v. CIA*, 456 F.3d 162, 166 (D.C. Cir. 2006) (holding that the plaintiff prevailed when he received documents pursuant to a court-adopted scheduling order, since the agency "was not under any judicial direction to

produce documents by specific dates; the … order changed that by requiring the Agency to produce all 'responsive documents' by the specified dates").

EPIC has "substantially prevailed" as to the almost 200 pages of documents it obtained from ODNI pursuant to a court order. As described above, EPIC filed its first FOIA request on March 29, 2012, and filed an administrative appeal for nonresponsiveness on June 8, 2012. EPIC then filed three more FOIA requests on June 15, 2012, and filed administrative appeals for nonresponsiveness on July 19, 2012. On August 1, 2012, EPIC filed suit for ODNI's failure to comply with the FOIA's statutory deadlines.

On October 15, 2012, EPIC and ODNI agreed to a joint proposed briefing schedule, which included a timeline for document production. The court adopted this schedule and issued its Order on October 16, 2012. It was only pursuant to this Order that ODNI produced its first set of documents. EPIC received the agency's first substantive response on December 14, 2012, four and a half months after filing suit. EPIC continued to receive documents, following the schedule set by the October 16, 2012 Order, through March 2013. EPIC plainly obtained relief under the FOIA through an "enforceable written agreement" – the joint briefing schedule – that was subsequently adopted as a judicial order.  As in *Judicial Watch* and *Davy*, the court's adoption of the Proposed Joint Scheduling Order compelled the agency to disclose responsive documents according to a set timeline. EPIC therefore "substantially prevailed."

## B.  EPIC has Satisfied the Four-Pronged Test for Entitlement to Fees

EPIC is also entitled to fees under the four-factor test employed by this Circuit. The court should consider "four criteria in determining whether a substantially prevailing

FOIA litigant is entitled to attorney's fees: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Davy*, 550 F.3d at 1159. *See also Morley v. CIA,* 719 F.3d 689, 690 (D.C. Cir. 2013) (reaffirming the four-factor test outlined in *Davy*).

### a.   EPIC Satisfies the "Public Benefit" Prong

The "public benefit" prong of the four-factor test easily weighs in EPIC's favor. "Public benefit" can be demonstrated by a "newsman who seeks information to be used in a publication or the public interest group seeking information to further a project benefitting the general public." *Davy*, 550 F.3d at 1158. The "public benefit" factor supports an award where the complainant's victory is "likely to add to the fund of information that citizens may use in making in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (citations omitted). This Court has found that news media coverage is relevant for determining "public benefit." *See, e.g., EPIC v. DHS,* 811 F. Supp. 2d 216, 233-34 (D.D.C. 2011) ("The records disclosed to the plaintiff in the course of this litigation have provided a public benefit in that they were covered extensively in the news and cited frequently as a news source during the public debate surrounding the use of whole body imaging devices in airports".)

EPIC's FOIA suit provided substantial benefit to the public. EPIC maintains two of the most popular websites in the world - www.epic.org and www.privacy.org - for searches on the term "privacy." EPIC disseminated the agency records it received on its www.epic.org web site[3] and to the approximately 8,000 recipients of its bi-weekly

---

[3] EPIC, "EPIC v. ODNI," http://epic.org/foia/odni/epic_v_odni.html (last accessed Oct. 23, 2013).

newsletter.[4] The documents that EPIC obtained in this matter were prominently featured

in an article in the *Huffington Post* on the National Counterterrorism Center as well as

several other publications:

> A training document released in response to a civil liberties organization's
> lawsuit and obtained by The Huffington Post reveals that the government
> considers an "analyst's wisdom" the ultimate arbiter of whether data on
> American citizens can be classified as "terrorist information" and retained
> forever.
>
> "Only a CT (counter-terrorism) analyst can determine whether data
> constitutes terrorism information," the electronic training course for new
> National Counterterrorism Center analysts states. "There is no requirement
> that the analyst's wisdom be rock solid or infallible."
>
> The document, identified by its introduction as a "rules of the road" course
> on data access and use, is marked "SECRET." But it was released in a
> significantly redacted form to the Electronic Privacy Information Center
> under a Freedom of Information Act request on Tuesday, in response to a
> lawsuit filed in August 2012.
>
> The training course is a novel window into the thought processes of
> analysts for the NCTC, which was created by President George W. Bush
> in 2003 in response to recommendations from 9/11 Commission. The
> NCTC is supposed to connect the dots on potential terrorist threats to the
> United States by combining information from other agencies like the
> Central Intelligence Agency, Federal Bureau of Investigation and
> Department of Homeland Security.

Matt Sledge, "National Counterterrorism Center's 'Terrorist Information' Rules Outlined

In Document," *Huffington Post*, Feb. 15, 2013.[5] *See also* "ODNI Docs: Data Collection

on US Citizens for Counterterrorism Center," LeakSource, Feb. 15, 2013;[6] Greg

Slabodkin, "ODNI: updated NCTC guidelines include privacy and civil liberty

---

[4] EPIC, "EPIC Obtains Counterterrorism Data Collection Docs on US Citizens," EPIC Alert 20.4[2] (Mar. 3, 2013), http://epic.org/epic_alert_2004.html.
[5] http://www.huffingtonpost.com/2013/02/15/national-counterterrorism-center-nctc-terrorist-information_n_2697190.html
[6] http://leaksource.wordpress.com/2013/02/17/odni-docs-data-collection-on-us-citizens-for-counterterrorism-center/

protections," FierceGovernmentIT, Jan. 1, 2013;[7] Bob Unruh, "Setback for Big Brother

database: Court orders release in program that excludes typical privacy safeguards,"

Secrets of the Fed, Oct. 19, 2012; [8] Bob Unruh, "Now White House Collecting Your

Personal Info," WND, Aug. 6, 2012.[9]

 Also after the receipt of the documents obtained by EPIC, the modifications to the

NCTC guidelines and the broadened scope of ODNI's data collection authority were

widely discussed in the national media. *See, e.g.,* Julia Angwin, "The NCTC

Controversy: a Timeline," The Wall Street Journal, Dec. 12, 2012;[10] Julia Angwin, "U.S.

Terrorism Agency to Tap a Vast Database of Citizens," The Wall Street Journal, Dec. 13,

2012;[11] Kashmir Hill, "The Little Known Spy Agency That Knows Your Flight Plans

And Much More," Forbes, Dec. 14, 2012.[12]

### b. The Nature of EPIC's Interest Is Entirely Public-Oriented and Non-Commercial

 "Commercial benefit to the complainant" might preclude an award if the

beneficiary is a "large corporate interest (or a representative of such an interest)."

*Freedom of Information Act and Amendments of 1974 Source Book* at 171. However,

commercial benefit does not bar recovery "where the complainant was indigent or a

nonprofit public interest group." *Id.* EPIC is a 501(c)(3) non-profit public interest

research center. *EPIC,* 241 F. Supp. 2d at 5. EPIC derived no commercial benefit from its

FOIA request or lawsuit. The sole benefit was derived by the public, which benefited

---

[7] http://www.fiercegovernmentit.com/story/odni-updated-nctc-guidelines-include-privacy-and-civil-liberty-protections/2013-01-31#ixzz2iMt44600
[8] http://www.secretsofthefed.com/setback-for-secret-big-brother-database/
[9] http://www.wnd.com/2012/08/now-white-house-collecting-your-personal-info/
[10] http://blogs.wsj.com/digits/2012/12/12/the-nctc-controversy-a-timeline/
[11] http://online.wsj.com/article/SB10001424127887324478304578171623040640006.html
[12] http://www.forbes.com/sites/kashmirhill/2012/12/14/the-little-known-spy-agency-that-knows-your-flight-plans-and-much-more/

from the disclosure of the documents released in this case.

The "nature of the [complainant's] interest" factor is "closely related [to] and often considered together" with the commercial benefit criterion. *Tax Analysts v. Dep't of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992) Favored interests are "scholarly, journalistic or public-interest oriented." *Freedom of Information Act and Amendments of 1974 Source Book* at 171. *See Long v. IRS*, 932 F.2d 1309, 1316 (9th Cir. 1991) (holding that a lower court's ruling that the plaintiff's scholarly interest weighed against her recovery of fees was held "wrong as a matter of law and an abuse of discretion."). As set forth above, EPIC's interest in this matter is squarely within the "scholarly, journalistic or public interest oriented" interests favored by the statute. *See, e.g., EPIC v. DHS,* 760 F. Supp. 2d 4, 44 (D.D.C. 2011) ("[EPIC's] aims, which include dissemination of information regarding privacy issues to the public, . . . fall within the scholarly and public-interest oriented goals promoted by FOIA").

### c. ODNI Did Not Have a "Reasonable Legal Basis" For Withholding Records

ODNI did not have a "reasonable legal basis" for failing to disclose records to EPIC. ODNI's delay in replying to EPIC's request and appeal plainly violated the FOIA's statutory deadlines. *See* 5 U.S.C. § 552(a)(6)(A). As described in EPIC's Complaint, ODNI violated statutory deadlines by failing to make a timely determination concerning EPIC's administrative request and appeal.

ODNI has cited no legal basis in opposition to EPIC's claims regarding the untimeliness of the agency's response – in fact, ODNI has not attempted to account for the delay at all. The agency explains its internal process for sorting and responding to FOIA requests but avoids addressing its violation of the statutory deadline. Dkt. 11.

In this case, EPIC was forced to sue ODNI in order to obtain critical information concerning the databases used to compile information in the National Counterterrorism Center. ODNI had no reason or legal basis to withhold these records. The agency must reimburse EPIC for its costs and fees.

## II. EPIC's Attorneys' Fees and Costs are Reasonable

### A.  EPIC Requests $8,828.50 in Costs and Fees

EPIC's fees and costs incurred in this matter are set forth in detail in Exhibit 1 – "EPIC's Bill of Fees and Costs." EPIC moves the Court to award EPIC a total of $8,828.50 – $8478.50 in attorneys' fees and $350 in costs. EPIC's request for attorneys' fees is supported by contemporaneously-recorded time records kept by EPIC's attorneys. Exhibits 1-5. EPIC's request is further supported by Affidavits. McCall Aff.; Horwitz Aff.; Rotenberg Aff. As set forth below, EPIC's fees and costs in this matter are reasonable.

### B.  The Laffey Matrix Provides a Reasonable Minimum Basis for Calculating EPIC's Fees

To determine whether fees are reasonable, courts focus on two questions: (1) whether the attorneys charged a reasonable hourly rate and (2) whether the time attorneys logged on the case was reasonable - *i.e.,* did the attorneys waste or otherwise unnecessarily spend time on the matter. *EPIC v. DHS,* 811 F. Supp. 2d 216, 237 (D.D.C. 2011).

Attorneys' fees are calculated based on the "lodestar," which is the number of hours the lawyers reasonably spent on the case multiplied by the lawyers' hourly rates. *Id*. A lawyer's hourly rate is measured by its "fair market value," as well as "the quality of the attorney's work." *See generally Johnson v. Ga. Highway Express, Inc.*, 488 F.2d

714, 717-19 (5th Cir. 1974) (enumerating fee calculation factors in civil rights cases); *Evans v. Sheraton Park Hotel*, 503 F.2d 177, 187-88 (D.C. Cir. 1974), cited with approval in *Copeland v. Marshall*, 641 F.2d 880, 889 (D.C. Cir. 1980) (*en banc*). "The District of Columbia Circuit has concluded that the second prong of the equation for calculating a fee award -- the reasonableness of hourly rates awarded under fee-shifting statutes -- consists of 'at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community.'" *American Lands Alliance v. Norton*, 525 F. Supp. 2d 135 (D.D.C. 2007) *citing Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).

If an attorney regularly bills clients for legal services, his normal billing rate is presumed to be the "fair market value" of the attorneys' work. *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988); *citing Laffey v. Northwest Airlines*, 746 F.2d 4, 16 n.74 (D.C. Cir. 1986). However, "for an attorney who has no customary hourly rate, the Court must look to the prevailing community rates in order to determine the appropriate hourly rate." *Save Our Cumberland Mountains*, 857 F.2d at 1518; *citing Blum v. Stenson*, 465 U.S. 886 (1984). "In the case of the public interest nonprofit law firm, [when] the attorneys have no billing histories," a "proxy for the market must be found in order to set a reasonable hourly rate." *Laffey*, 746 F.2d at 16 n.74.

> In *Laffey*, the District of Columbia Circuit affirmed the District Court's reasonableness assessment for measuring reasonable hourly rates, now commonly known as the *Laffey* Matrix. The *Laffey* Matrix designates what are reasonable hourly rates for attorneys of varying experience, and is adjusted annually based on cost of living increases. *Falica v. Advance Tenant Servs., Inc.*, 384 F. Supp. 2d 75, 78 (D.D.C. 2005). As this Court previously reiterated, "[u]sing this matrix as a guide, the Court must then exercise its discretion to adjust this sum upward or downward to arrive at

> a final fee award that reflects the characteristics of the particular case (and counsel) for which the award is sought." *Id*. (quoting *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 361 (D.D.C. 1983)). Additionally, parties "may point to such evidence as an updated version of the *Laffey* matrix or the [United States] Attorney's Office matrix, or their own survey of prevailing market rates in the community." *Covington*, 57 F.3d at 1109.

*American Lands Alliance*, 525 F. Supp. 2d at 148-49.

The Laffey Matrix is published by the Department of Justice at:

http://www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_8.html and is

attached as Exhibit 6.

### III. EPIC is Entitled to Recover "Fees on Fees"

EPIC is entitled to recover fees on fees for the time spent litigating the fee issue

against ODNI. "It is a common practice in this jurisdiction to award fees on fees in FOIA

cases." *EPIC v. DHS,* 811 F. Supp. 2d 216, 237 (D.D.C. 2011) (*citing Heard v. District of

Columbia,* 2006 U.S. Dist. LEXIS 62912, 2006 WL 2568013, at *18 (D.D.C. Sept. 5,

2006); *Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Veteran Affairs,* 1999 WL

33740260, at *2 (D.D.C. Apr. 13, 1999)) (court awards fees on fees following a

determination that "the hours spent by the plaintiff on these tasks were reasonably

expended and do not constitute a 'windfall' for the attorneys.") *See also Citizens for

Responsibility & Ethics v. United States DOJ*, 825 F. Supp. 2d 226, 233 (D.D.C. 2011)

("On close scrutiny of the record, therefore, the Court determines that the hours spent by

Plaintiff were 'reasonably devoted to [its] request for fees,' . . .) (citations omitted).

### CONCLUSION

As discussed above, EPIC substantially prevailed in this lawsuit, thereby

triggering the FOIA's fee-shifting provision. EPIC is eligible for and entitled to recover

its fees and costs from ODNI in this matter. EPIC's fees are reasonable and supported by

the attached affidavits and time records. EPIC moves the Court to award EPIC $8,828.50

in fees and costs. A proposed Order is attached.


Respectfully submitted,

_____/s/ Marc Rotenberg_____
MARC ROTENBERG (DC Bar # 422825)
Electronic Privacy Information Center
1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009
202-483-1140
*Counsel for Plaintiff*


Dated: October 23, 2013